UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THOMAS JERMYN, on behalf of himself
and all others similarly situated,

Docket No. 08 CV 00214

                Plaintiff,

- against -

BEST BUY STORES, L.P.,

                Defendant.
------------------------------------------------------------X

## NOTICE OF MOTION

TO:    Jennifer G. Daugherty, Esq.
         Robins, Kaplan, Miller & Ciresi L.L.P.
         2800 LaSalle Plaza
         800 LaSalle Avenue
         Minneapolis, MN 55402-2015

**COUNSEL:**

**PLEASE TAKE NOTICE** that Plaintiff Thomas Jermyn on behalf of himself and all others similarly situated, by his undersigned counsel, shall move before the Honorable Colleen McMahon at the U.S. District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, located at 500 Pearl Street, New York, NY 10007-1312, for an Order granting (1) class certification; (2) appointing Thomas Jermyn as the Class representative; and (3) appointing the firms Kantrowitz, Goldhamer & Graifman, P.C. and Green & Pagano, LLP as Class counsel;

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Court's briefing schedule the defendant's opposition papers, if any, are on June 26, 2008 and the plaintiff's reply papers are due July 3, 2008.

**PLEASE TAKE FURTHER NOTICE** that in support of this motion, plaintiff will rely upon the declaration of Thomas Jermyn, declaration of Michael L. Braunstein, Esq. and the exhibits attached thereto, the declaration of Juan Ortiz, the declaration of Boris Manzheley, the accompanying Memorandum of Law, and all prior proceedings had herein;

**PLEASE TAKE FURTHER NOTICE** that in light of the Stipulated Protective Order, signed by this Court on May 2, 2008, the declaration of Michael L. Braunstein, Esq. and the exhibits attached thereto and the accompanying Memorandum of Law shall only be filed under seal.

**PLEASE TAKE FURTHER NOTICE** that oral argument is requested.

Dated: June 5, 2008
Chestnut Ridge, New York

KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.

By: _____
Gary S. Graifman
Michael L. Braunstein
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel:   (201) 391-7000


Michael Scott Green, Esq.
**GREEN & PAGANO, LLP**
522 Route 18
P.O. Box 428
East Brunswick, NJ 08816
Tel:   732-390-0480

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
THOMAS JERMYN, on behalf of himself
and all others similarly situated,

　　　　　Docket No. 08 CV 00214

　　　　　Plaintiff,

- against -

BEST BUY STORES, L.P.,

　　　　　Defendant.
-----------------------------------------------------------X

## DECLARATION

STATE OF NEW YORK　　）
　　　　　　　　　　　　） ss.:
COUNTY OF NEW YORK　）

Thomas Jermyn does hereby declare as follows:

　　1.　　The statements made in this Declaration are based on my personal knowledge and, if called as a witness, I could and would testify thereto.

　　2.　　I am one of the representative plaintiffs in this class action. This Declaration is given in support of my request that the court certify this case as a class action.

　　3.　　Best Buy has multiple stores within the City, State and County of New York, including, but not limited to, a store located 60 West 23rd Street, New York, New York.

　　4.　　On May 13, 2005, I purchased a Nikon D-70 camera from Best Buy for $1,199.99.

　　5.　　On May 20, 2005, I saw the same Nikon Camera advertised at a local competitor, TriState Camera Video & Computers ("TriState"), for less.

　　6.　　TriState is located at 650 Avenue of the Americas (at 20th Street), New York, New York, only blocks from Best Buy's 60 West 23rd Street, New York, New York store.

7. On May 20, 2005, I returned to Best Buy with a copy of the TriState advertisement for $859.99 after $100 rebate.

8. I requested the benefit of Best Buy's "price match guarantee".

9. Despite my demand, Best Buy refused to honor its stated "price match guarantee".

10. Accordingly, on May 20, 2005, I returned the Nikon Camera to Best Buy.

11. Best Buy, in addition to not honoring it "price match guarantee", charged me $180.00 to return the Nikon Camera.

12. Later on May 20, 2005, after returning the Nikon Camera to Best Buy, I purchased the same Nikon Camera from TriState for $959.99, with a $100.00 rebate.

13. I have consulted with class counsel from time to time to review, discuss and determine the actions to be taken and decisions to be made in the pursuit of this case on behalf of all class members. Based on these interactions and my relationship with class counsel, I believe that class counsel has fairly and adequately represented the class and will continue to do so.

14. I understand that, as a class representative, I have an obligation to assert and protect the interests of other class members and not act just for my own personal benefit. I do not have any conflict with other class members. I will do my best to protect the interests of other class members and will fairly and adequately represent the class to the best of our ability.

15. It is my understanding that Best Buy treated me the same way it treated all other class members engaging in similar transactions. I therefore request, on behalf of myself that the court certify this case as a class action.

Dated: June 4, 2008

_____
THOMAS JERMYN

# DECLARATION

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF KINGS      )

Boris Manzheley, being duly sworn, deposes and declares:

1.  I am an adult individual residing at 1759 Bay Ridge Parkway, Brooklyn, New York 11204.

2.  I worked at the Columbus Circle, New York City Best Buy location from September 2007 until December 2007. I was a Geek Squad/PCHO Associate during my tenure with Best Buy.

3.  In my position, I was personally familiar with Best Buy's corporate policy of discouraging and denying customers the benefits of its price match guarantee.

4.  Best Buy had a corporate undisclosed policy of discouraging and denying customers' proper price match requests. In addition to discouraging and denying proper price match requests, management mandated that all price match requests that resulted in a product being sold at less then five (5%) percent above cost would be denied. Best Buy's corporate undisclosed anti-price match policy was disseminated from corporate headquarters.

5.  To effectuate this undisclosed anti-price match policy, Best Buy provided a financial incentive for denying proper price match requests. Store general managers, managers, supervisors and to a lesser extent employees received a bonus, in part, based upon the store's success in denying customers proper price match guarantee.

6.  At a corporate level, Best Buy set weekly budget/revenue goals. If these weekly goals were exceeded, bonuses were received. Since price match transactions reduced revenue,

management instructed Best Buy employees to deny proper price match so that management, supervisors and to a lesser extent employees would receive these weekly bonuses.

7.      Best Buy omitted and failed to disclose this corporate policy of discouraging and denying customers' proper price match requests

Dated: June 4, 2008

_____
BORIS MANZHELEY

## DECLARATION

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF NEW YORK  )

Juan Ortiz, being duly sworn, deposes and declares:

1. I am an adult individual residing at 446 East 78th Street, New York, New York.

2. I worked at the West Hartford, Manchester and Danbury, Connecticut, Best Buy location from September, 2002 until March 2005.

3. I was a Computer Technology Supervisor, Computer Service Supervisor and Operation Supervisor during my tenure with Best Buy. My duties and responsibilities included, responsibility for maintaining company standards as determined by the Vice President of Operations and Operations Manager, recording and reviewing productivity measures and profit reports, operational self audits, loss prevention audits and ensuring productivity objectives.

4. In my positions, I was personally familiar with both Best Buy's public and internal "price match guarantee" policies.

5. Publicly, Best Buy advertised and promoted a "price match guarantee".

6. However, Best Buy had corporate non-public undisclosed policy of aggressively discouraging and denying customers' proper price match requests. Best Buy's corporate undisclosed policy of aggressively discouraging and denying customers' proper price match requests was disseminated from corporate headquarters to regional managers to store managers and assistant managers to necessary store employees.

7. Best Buy would aggressively discourage customers' proper price match requests by, among other things, creating a multi-level procedure to request a price match in which the customers would have to escalate their price match request to at least three levels of Best Buy

1

representatives to have their request considered; denied customers' price match request claiming that the local competitor was out of stock without calling or checking; and denying that the advertisement was from a local competitor regardless of its source. Each store received a certain monetary allocation to give to customers, if a store had exceeded its allocated amount all price matches would be denied. I learned these and other techniques at Best Buy's district facility in White Plains, New York and Best Buy's training store located in Westchester, New York.

8. In fact, store management received bonuses, in part, based upon the store's success in denying customers the benefits of the price match guarantee.

9. District Managers, General Managers and Store Managers/Junior Managers received bonus which were directly related to not giving money to customers who requested price matches.

10. I estimate that the store I worked in denied in excess of 100 proper customer price match requests per week. Based upon my conversations with Best Buy managers and assistant managers in other Best Buy stores located in New York and throughout the country, I believe that this estimate is accurate for all Best Buy stores.

11. Based upon my experience, I would estimate that 20% to 30% of all store returns resulting in restocking fees were from customers who were entitled to but denied the benefit of Best Buy's price match guarantee. Based upon my conversations with Best Buy managers and assistant managers in other Best Buy stores located in New York and throughout the country, I believe that this estimate is accurate for all Best Buy stores.

12. I estimate that for the store I worked in 90% customers per who had already purchased a product, properly requested the benefit of the price match policy and were refused, but did not return the item because the price difference did not exceed the 15% restocking fee.

Based upon my conversations with Best Buy managers and assistant managers in other Best Buy stores located in New York and throughout the country, I believe that this estimate is accurate for all Best Buy stores.

Dated: May 8, 2008

_____
JUAN ORTIZ