UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/19/09

THOMAS JERMYN, on behalf of himself and all others similarly situated,

Plaintiff,

against

BEST BUY STORES, L.P.,

Defendant.

08 Civ. 214 (CM)

DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

McMahon, J.

**Introduction**

Plaintiff Thomas Jermyn ("Jermyn") brings this lawsuit in his own right, and on behalf of thousands of similarly situated New York consumers, against defendant Best Buy Stores, L.P. ("Best Buy" or "company"). The plaintiff alleges five causes of action: (1) common law false advertising; (2) false and deceptive practice under Minnesota's Consumer Fraud Act; (3) false and deceptive acts and practices under New York General Business Law § 349; (4) false and deceptive acts and practices under New York General Business Law § 350; and (5) unjust enrichment. He also alleges a sixth "cause of action" for injunctive relief, which is not a claim but a remedy.[1]

[1] Plaintiff's Complaint also asserted a claim under Minnesota's Private Attorney General Statute, the conduit for asserting a Minnesota Consumer Fraud Acts claim, which has been removed from the Complaint by Court order.

Plaintiff alleges that Best Buy uses false and deceptive trade practices in adverting and applying the company's well-known "price match guarantee" policy. Best Buy tells the consuming public that it will match a competitor's lower price on any item purchased in the store. Plaintiff alleges that Best Buy uses its "price match guarantee" policy as a ploy, to lure unsuspecting consumers into its stores and to induce them to purchase its merchandise, while allegedly having an undisclosed "Anti-Price Matching Policy," pursuant to which employees aggressively deny customers' legitimate price match requests. Plaintiff, who claims he was victimized by Best Buy's undiclosed "Anti-Price Matching Policy," sues on his own behalf and on behalf of a class consiting of:

> All New York citizens and residents who, from January 10, 2002 until the present, made a purchase at Best Buy and within 30 days (14 days for computers, monitors, notebook computers, printers, camcorders, digital cameras and radar detectors) of the purchase found a lower price from an entity qualifying under Best Buy's price match guarantee on an available product of the same brand and model, provided verification of the lower price to Best Buy and were denied the benefit of Best Buy's price match guarantee.
>
> Excluded from the Class are the defendant; any parent, subsidiary or affiliate of the defendant; any entity in which the defendant has or had a controlling interest, or which the defendant otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor or assignee of the Defendant. [2]

(Pl. Mem. at 4.)

Plaintiff asserts that his Complaint raises numerous questions of law or fact that can easily be resolved on a class-wide basis, and that these issues predominate over any individualized ones. The Complaint also seeks injunctive relief to protect the class as a whole.

---

[2] The complaint originally alleged a nationwide class. On the present motion before the Court, the plaintiff only seeks certification of a New York State class.

Plaintiff moves to certify the proposed class. The motion is granted, with the caveat that some class members (a subclass) will not be able to assert claims under New York General Business Law.

**Procedural Background**

On January 10, 2008, the plaintiff filed his initial complaint in this Court. On March 3, 2008, a Court Ordered Stipulation was entered allowing plaintiff to amend the complaint. On March 27, 2008, the plaintiff filed the First Amended Complaint ("Complaint").

On April 18, 2008, Best Buy filed its Answer; on June 4, 2008, it filed an Amended Answer. The parties then engaged in class certification discovery. Initial disclosures were exchanged pursuant to Federal Rule of Civil Procedure 26(a)(1), documents were requested and produced and interrogatories were propounded and answered. Best Buy's counsel deposed Jermyn on May 2, 2008, and the plaintiff's counsel deposed three Best Buy corporate representatives, produced pursuant to Federal Rule of Civil Procedure 30(b)(6), on May 22 and 23, 2008. Based upon the Rule 30(b)(6) depositions, the plaintiff identified and specifically requested the production of responsive documents that Best Buy had not previously produced.

**Factual Background**

**A. Best Buy**

Best Buy is the largest specialty retailer of consumer electronics in the United States and Canada. (Braunstein Decl. Ex. 1 ¶ 2 (hereinafter, "Compl.").) As part of its effort to advertise, promote, and sell its goods and services—which helped it exceed $30 billion in revenue in 2006—Best Buy publishes, advertises and promotes a "price match guarantee." (Id.; Braunstein Decl. Ex. 3 at 46:10-19 (hereinafter, "Cox-Feeney Test.").) Best Buy "guarantees" that it will match any local competitor's lower price; if a customer has already purchased the product at

Best Buy, defendant will refund the price difference, plus an additional 10% of that difference. (Braunstein Decl. Ex. 25; Ex. 26.)

Best Buy advertises its price match guarantee in its Sunday circular advertising. (Cox-Feeney Test. at 48:3-22.) It is prominently displayed in Best Buy's stores on giant nine panel signs; included on an in-store tear pad; used on its website and mentioned in television commercials. (Id.) Best Buy's salespeople are told to remind customers about the price match guarantee as a "closing tool" if a prospective buyer is reluctant to make a purchase. (Id. at 47:8-15.)

The price match guarantee was consistent with Best Buy's original pricing strategy— "Beat everybody, everyday, everywhere on everything." (Braunstein Decl. Ex. 4 at BBJM 004598.) However, Best Buy learned that competing on price was not always profitable. (Id.; Braunstein Decl. Ex. 5; Cox-Feeney Test. at 86:18-25.) By April 2003, the company's stated mission was to "*[f]ind ways to get 'bargain hunting' customers to shop on our terms or disinvite themselves*." (Braunstein Decl. Ex. 6 at BBJM015206.)

The plaintiff alleges that, in the past, Best Buy's primary focus was on the "Front Door: how we invite customers to shop with us." (Id. at BBJM015207.) However, once Best Buy learned that competing on price was not "sustainable" (as plaintiff puts it), it decided that it needed to "defend our 'back door' from profits being stolen from us." (Id.) As a result, plaintiff asserts that Best Buy chose a middle ground: accept the "front door" benefits of using the price match guarantee to get customers to purchase at Best Buy, while defending the "back door" by "aggressively discouraging and denying customers' legitimate price match requests." (Ortiz Decl. ¶ 6.) Plaintiff contends that the tool used by Best Buy to achieve this goals was the undisclosed "Anti-Price Matching Policy." Two ex-Best Buy employees, Juan Ortiz and Boris

Manzheley, have testified about the existence of Best Buy's Anti-Price Matching Policy. Ortiz, a supervisor at three Best Buy locations in Connecticut from September 2002 until March 2005, (Ortiz Decl ¶¶ 2-3), averred that:

- Best Buy had an undisclosed Anti-Price Matching Policy;
- The Anti-Price Matching Policy was disseminated from corporate headquarters;
- Best Buy taught its employees how to deny price match requests at Best Buy facilities in New York;
- Best Buy provided financial bonuses based, in part, on denying proper price match requests; and
- Best Buy denied more than 100 proper price match requests per store per week.

(Id. ¶¶ 6-10). Manzheley (a former associate at a New York Best Buy) also declared that, while he worked at Best Buy from September 2007 until December 2007, the company had an Anti-Price Matching Policy, and it gave its employees financial incentives if they denied legitimate price match requests. (Manzheley Decl. ¶¶ 4-7.)

**B. Best Buy's Price Match Policy**

Over the years, Best Buy's price match guarantee has gone through minor revisions; however, the essential terms relevant to the plaintiff's claims have remained the same.

From sometime prior to 2001 until July 17, 2005, Best Buy's price match guarantee was couched in these terms:

> Price Guarantee We'll beat their lowest price. If within 30 days (14 days for computers, monitors, notebook computers, printers, camcorders, digital cameras and radar detectors) of your purchase from Best Buy, you find a local competitor (excluding Internet offers) offering a lower price on an available product of the same brand and model, we will refund the difference plus another 10% of the difference.

> Bring us verification of the lower price, plus your original Best Buy receipt to claim your refund. Does not apply to specials, bonus or free offers and in California, cellular phones and pagers.

(Braunstein Decl. Ex. 25.)

After July 17, 2005, Best Buy's "price match guarantee" was revised as follows:

> Here are two more great reasons for you to shop with confidence at Best Buy.
>
> If you are about to make a purchase and discover a lower price than ours, let us know and we'll match that price. Guaranteed.
>
> Already bought? We'll refund you the price difference, plus an additional 10% of that difference, up to 30 days after your purchase (14 days on select categories*).
>
> Either way, simply bring in proof of a local retail competitor's price on the same available brand and model, and we'll do the rest.

(Braunstein Decl. Ex. 26.) The term "local retail competitor" meant "[a] retail store located in the same market area as your local Best Buy store." (Id.) Cynthia Cox-Feeney, one of Best Buy's 30(b)(6) designees, testified that a local competitor is "a store that is authorized to sell consumer electronics. . . . It would not be a street vender with a cart. So a legitimate store." (Cox-Feeney Test. at 46:5-7.)

Cox-Feeney testified that Best Buy has one national price match guarantee policy. (Id. at 51: 1.) She testified that Best Buy changed the price match guarantee policy after July 17, 2005, to include "price match" for prices listed on BestBuy.com (id. at 50:12-16); it also made clear that mail-in rebates or gift cards could not be substitutes for a competitor's list price. (Id.) In August 2006, Best Buy broadened its price match guarantee to include "click and mortar" stores.[3] (Id. at 49:12-17.) Any other changes the company made to its price match policy were superficial and purely for "clarification" (e.g., grammatical changes). (Id. at 49:24, 50:17-18.)

---

[3] The addition of "click and mortar" stores meant that Best Buy would "match Internet retailers that has [sic] a local store presence and that matched their own Internet prices." (Id. at 49:15-

### C. Best Buy's Anti-Price Matching Policy

Plaintiff alleges that, contrary to Best Buy's stated and advertised price match guarantee policy, it has an undisclosed corporate Anti-Price Matching Policy of "aggressively discouraging and denying customers' proper price match requests." (Ortiz Decl. ¶ 6.) Best Buy's corporate headquarters created the Anti-Price Matching Policy and disseminated it to regional managers, store managers, assistant managers and necessary store personnel. (Id.) The company taught its employees how to use the policy—that is, how to prevent and deny price match requests—at its district facility and training store located in New York. (Id. ¶ 7.)

Best Buy's Anti-Price Matching Policy included implementing a "multi-level" structure for price match requests in its stores, in which a customer had to discuss his price match request with "at least three levels of Best Buy representatives to have the request considered." (Id. ¶ 7.) In every case, the policy mandated that store management deny the request if a price match request caused a product to be sold at less than 5% above cost. (Manzheley Decl. at ¶ 4.) The policy gave each store an allowance for how much money it could pay for price matches. (See Ortiz Decl. ¶ 7.) Once a store exceeded its "allowance," all price match requests had to be denied. (Id.) In addition, Best Buy gave its general managers, managers, and supervisors (to a lesser extent its associates) financial incentives to deny legitimate price match requests by offering them a weekly bonus based, in part, on the store's success in denying price match requests. (Id. ¶ 9; Manzheley Decl. ¶¶ 5-6.)

The plaintiff argues that the extent and significance of Best Buy's Anti-Price Matching Policy is reflected in defendant's internal documents. For example, on October 19, 2006, Phil

---

17.)

Britton, a member of Best Buy's Competitive Strategies Group and long-time employee, wrote in a document entitled "Competition Insider Templates":

> **Price Matches**
>
> It looms on the wall, on a 9 foot tall sign. Our Price Match policy. There it is, plain as day, in English (Y en espanol para los de usted que puede leerio.) However, just because it is our policy, do we abide by it? Does it really help the customer?
>
> What is the first thing we do when a customer comes in to our humble box brandishing a competitor's ad asking for a price match? *We attempt to build a case against the price match.* (Trust me, I've done it too). Let's walk through the "Refused Price Match Greatest Hits:"
>
> Not same model? Not in stock at the competitor? Do we have a free widget with purchase? Is it from a warehouse club (they have membership fees, you know)? Limited Quantities? That competitor is across town? We've got financing! Is it an internet price? It's below cost! What about my NOP?

(Braunstein Decl. Ex. 8 at BBJM021690). Best Buy's explanation for this document—and its blatant attempt to minimize the clear import of Britton's statement—is that, "[Britton] is a long-standing employee with a sense of humor, so whatever he said about 'greatest hits,' he's got a sense of humor to make things—one of our—our values is having fun while being the best, and he does embrace that." (Cox-Feeney Test. at 140:5-9.) The plausibility of this explanation will be for a jury to decide.

Another document, labeled the "Bundle Calculator," tells an employee how to use a "tool" to help him handle a price match request. The document explains that, "When a Customer Requests We Match a Competitors Price"

> - The tool will then need *to calculate the expected profit (loss) on the sale so the store employees can decide whether or not to match the price.*
> - *After reviewing the profit*, the store could decide to accept, or reject, the competitors [sic] price.

(Braunstein Decl. Ex. 9 at BBJM016444 (emphasis added).) Employees need permission to authorize a price match over a "threshold amount," which varies by product. (Cox-Feeney Test. at 125:7-17.) If the price match exceeds the predetermined threshold amount, "then something will prompt up on the screen saying that you need a manager's approval." (Id. at 126:3-5.)

**D. Best Buy Denies Plaintiff's Price Match Request**

On May 13, 2005, the plaintiff purchased a Nikon D-70 camera for $1.999.99 from a Best Buy store located at 60 West 23rd St., New York. (Braunstein Decl. Ex. 11.) On May 20, 2005, the plaintiff saw the same Nikon Camera advertised for less ($859.99 after $100 rebate) at a local competitor, TriState Camera Video & Computers ("TriState"). (Braunstein Decl. Ex. 12.) TriState is located at 650 Avenue of the Americas (at 20th St.), New York, New York, only blocks away from Best Buy's 60 West 23rd St. store. (Compl. ¶12; see also Braunstein Decl. Ex. 13 at 39:14-17 (hereinafter, "Jermyn Test.").)

On May 20, 2005, the plaintiff returned to Best Buy with a copy of the TriState advertisement in hand and asked Best Buy to match TriState's advertised price. Best Buy denied his request without explanation. Furthermore, a Best Buy employee told Jermyn that the store would charge him a restocking fee if he tried to return the camera. (See Jermyn Test. at 40:4-8, 40:14-18.). Since it was cheaper for the plaintiff to pay Best Buy's restocking fee for returning the camera ($180) and buy the same camera at TriState, he returned the camera and paid the fee. (Id. at 40:8-14.) Later that day, the plaintiff bought the Nikon Camera from TriState for $959.99, with a $100.00 rebate. (Braunstein Decl. Ex. 15.)

### E. Price Match Complaints

Plaintiff alleges that he is one of thousands of New York Best Buy customers who have been wrongly denied the benefits of Best Buy's advertised price match guarantee due to Best Buy's secret Anti-Price Matching Policy. Best Buy admits that it knows of instances where price matches were not granted in its stores (Cox-Feeney Test. at 61:4-18), and that customers complained that Best Buy refused to honor its price match guarantee. (Braunstein Decl. Ex. 16 at 43:5-10 (hereinafter, "Cermak Test."); see, e.g., Braunstein Decl. Ex. 17 ("I was told that Best Buy will price match with competitors however, when attempting to utilize this policy I have encountered much resistance from BB associates (on several occasions)".) In fact, one of the top ten themes in written customer complaints about Best Buy is "Misleading signage/special promotions and pricing problems including price matching." (Braunstein Decl. Ex. 18.)

Best Buy has an internal policy that "warehouse clubs" (e.g., Costco) are included in the definition of "local retail competitor" for the purposes of the price match guarantee. Despite this inclusion, Best Buy's own internal survey revealed that "60 percent of the time the store employees do not honor the customer's request to match a club . . . ." (Cox-Feeney Test. at 181:17-18; Braunstein Decl. Ex. 20.)

Best Buy's enterprise customer care ("ECC" of "call center") division, which acts as a type of "call center" for customers who wish to contact Best Buy, documented a number (approximately 5,300) of price match related complaints in New York in less than two years. (Braunstein Decl. Ex. 22; Pl. Reply Mem. at 11.) This list only includes calls, emails and letters to Best Buy, and does not include in-store customer complaints or BestBuy.com customer complaints about price matching. The ECC documents show that customers often complained that they were deprived of the benefits of Best Buy's price match guarantee. (Id.; Braunstein

Decl. Ex. 10 at 99:6-10 (hereinafter, "Palmehn Test.").) In addition, Best Buy knew from a "CSI survey" (a customer survey) that many customers were upset because they believed that Best Buy denied legitimate price match requests. (Palmehn Test. at 43:5-10, 97:4-99:5.)

One former Best Buy employee, based on his own experience and conversations with other managers and assistant managers at different Best Buy stores, estimates that each Best Buy store denies in excess of 100 legitimate customer price match requests per week per store. (Ortiz Decl. ¶ 10.) A Better Business Bureau audit found that Best Buy's execution of its price match policy was, at best, inconsistent. (Cox-Feeney Test. at 183:13-22). Newspaper accounts, as well as a lawsuit brought against Best Buy by the Connecticut Attorney General (Braunstein Decl. Ex. 23), detail Best Buy's use of a secret "intranet" screen at its stores' kiosks as a way to deprive customers of the benefits of the company's price match guarantee. (Braunstein Decl. Ex. 23; Ex. 24.) A customer would go to a Best Buy and ask the store to match the price of a product that was advertised at BestBuy.com. An employee would use the kiosks, which were designed to look exactly like BestBuy.com, to make a customer believe that the BestBuy.com price was same as the in-store price, when in fact the in-store price was much higher.

Finally, because of Best Buy's 15% restocking fee, plaintiff estimates that 90% of customers who made a legitimate post-purchase price match request (like Jermyn), but who are refused the benefits of the price match policy, did not return the item and purchase an identical product at the competitor's store (as Jermyn did). The restocking fee eliminated any of the savings the customer would have realized by returning the product and buying it from the competitor. (Ortiz Decl. ¶ 12.)

The plaintiff argues that he and the class have been damaged as a result of Best Buy's Anti-Price Matching Policy, including, but not limited to, being charged 15% restocking fees on

items returned after Best Buy refused valid price match requests, and being denied the 10% difference between the lower advertised price and what was paid.

**Discussion**

The Supreme Court has held that district courts must conduct a "rigorous analysis" into whether the prerequisites of Federal Rule of Civil Procedure 23 are met before certifying a class. Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982); see also Caridad v. Metro North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1991) overruled on other grounds, In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 42 (2d Cir. 2006) [hereinafter, In re IPO]. Recently, the Second Circuit clarified what a "rigorous analysis" entails:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met;
>
> (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met;
>
> (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement;
>
> (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and
>
> (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

In re IPO, 471 F.3d at 41.

The "prerequisites" for determining a motion for class certification are well settled and require little discussion. The basic criteria for the certification of a class action are:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 132-33 (2d Cir. 2001) overruled on other grounds, In re IPO, 471 F.3d at 42; Shankaroff v. Advest, Inc., 112 F.R.D. 190, 193 (S.D.N.Y. 1986).

One of the three elements of Rule 23(b) must also be satisfied. See Visa Check, 280 F.3d at 133; Bresson v. Thomson McKinnon Sec., 118 F.R.D. 339, 344-45 (S.D.N.Y. 1988). In this case, the plaintiff seeks certification pursuant to Rule 23(b)(2) and (b)(3), which is appropriate when:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to any other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(2)-(3).

**A. Rule 23(a)**

**1. Numerosity**

Rule 23(a)(1) provides that a member of a class may sue on behalf of all class members only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff need not prove the exact number of class members; he only needs to show that the class is so numerous that the joinder of all potential plaintiffs would be difficult or

inconvenient. See Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993); Primavera Familienstiftung v. Askin, 178 F.R.D. 405, 409 (S.D.N.Y. 1998). "Generally courts will find a class sufficiently numerous when it comprises 40 or more members." Petrolito v. Arrow Fin. Servs. LLC, 221 F.R.D. 303, 309 (D. Conn. 2004) (citing Robidoux, 987 F.2d at 936).

Plaintiff easily surpasses the numerosity hurdle. He alleges that thousands of customers were damaged when they were unfairly denied the benefits of Best Buy's price match guarantee. (Compl. ¶ 52.) Ortiz, a former Best Buy employee, testified that Best Buy denied more than 100 legitimate price match requests per store per week. One of Best Buy's 30(b)(6) designees, Palmehn, testified that the company has three to five districts in New York with each district having 10 to 15 stores. (Palmehn Test. at 29:3-6.) A conservative estimate of these figures suggests that in the New York region, Best Buy wrongly denies 3,000 legitimate price match requests in a week.

Furthermore, Best Buy's own records reveal that the price match guarantee was applied inconsistently and that 60% percent of customer requests to match warehouse club prices are wrongly denied. Best Buy's ECC documents show that the company received 5,300 customer complaints about price match in New York alone in less then two years. As Best Buy admits, most of these complaints are from customers who did not receive a price match to which they believed they were entitled. Given these facts, a class well in excess of 40 can be inferred and the Rule 23 numerosity requirement is met.

Best Buy argues that Ortiz's declaration, on which plaintiff relies to establish numerosity, is inadmissible hearsay and should be rejected. The defendant is mistaken—Ortiz's testimony is not hearsay. Ortiz testifies about his own experiences as a Best Buy supervisor, his interactions with other Best Buy employees, and what he was taught and told by his superiors. That is direct

evidence, which he is perfectly competent to give.

Furthermore, even without Ortiz's testimony, the other undisputed documentary evidence from Best Buy's records shows that a class in excess of 40 members can easily be inferred.

**2. Commonality**

The second prong of the Rule 23(a) test requires plaintiff to demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) does not require the plaintiff to demonstrate that the class members' claims are identical. Caridad, 191 F.3d at 293. Rather, it demands that the disputed issue of law or fact "occup[ies] essentially the same degree of centrality to the named Plaintiffs' claim as to that of other members of the proposed class." Krueger v. New York Tel. Co., 163 F.R.D. 433, 442 (S.D.N.Y. 1995); see also In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 145, 166-67 (2d Cir.1987). The commonality requirement may be met where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997) (per curiam) (finding commonality where a proposed class of children argued that "a unitary course of conduct" by the city department for children's services would place them at risk of abuse or neglect).

Best Buy contends that the commonality requirement is not met because a host of individualized questions predominate over common questions. It argues: (1) "the claims of each class member . . . are dependent upon each class member's individual conversations with a Best Buy employee" (Def. Opp'n at 20); (2) there are three different versions of the price match policy during the proposed seven year time period, which shows that issues cannot be resolved by examining the "same evidence" (id. at 20-21); and (3) the evidence will be "highly individualized." (Id. at 21.)

These arguments are unconvincing. Such differences are primarily relevant to the amount of damages to which a class member may be entitled if and when liability is established. "It is well-established that individual questions with respect to damages will not defeat class certification or render a proposed representative inadequate unless that issue creates a conflict which goes to the heart of the lawsuit." Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (quoting In re AM Int'l, Inc. Sec. Litig., 108 F.R.D. 190, 196 (S.D.N.Y.1985). No such conflict exists in this case.

Defendant's argument would turn the commonality requirement on its head by making it impossible to certify a class if *any* individualized issue existed. Best Buy's contention that each class member had a different conversation with a Best Buy employee is undoubtedly true. However, commonality "does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant class treatment." Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 153 (S.D.N.Y. 2002) ("The commonality requirement is satisfied if the class *shares even one common question of law or fact*, and factual differences in the claims of the class do not preclude a finding of commonality.") (citations and quotations omitted) (emphasis added).

In this case, the class shares a number of common questions of law and fact sufficient to form a "unifying thread." They are:

1) Whether Best Buy has an 'internal' policy or practice of refusing to honor its price match guarantee;

2) Whether Best Buy's 'internal' policy was in conflict with its 'public' price match guarantee policy;

3) Whether Best Buy's practice of not honoring its price match guarantee is a "deceptive act or practice" within the meaning of New York's General Business Law Section 349;

4) Whether Best Buy's advertisements about its price matching guarantee were false and misleading and violated New York's General Business Law Section 350; and

5) Whether Best Buy has been unjustly enriched by its policy and practice of not honoring its price match guarantee.

Best Buy also mischaracterizes the nature of plaintiff's lawsuit. Plaintiff's lawsuit is not based on a theory of oral misrepresentation by Best Buy employees. Rather, he alleges that Best Buy failed to disclose that it had an "Anti-Price Matching Policy" to undercut the well-publicized "price match guarantee." Whether one employee used technique "X" to reject someone while another used technique "Y," the allegations is that Best Buy employees acted because defendant had a clandestine policy. Whether for "X" or "Y" reason, the member's request was rejected. That satisfies the commonality requirement. See Dupler v. Costco Wholesale Corp., 249 F.R.D. 29, 37 (E.D.N.Y. 2008) (noting that commonality is often satisfied when the defendants are alleged to have directed standardized conduct toward the putative class members).

Finally, Best Buy argues that commonality is lacking because New York General Business Law Sections 349 and 350 have a three year statute of limitations. The proposed class period runs from January 10, 2002 to the present; such a class would include members whose claims are time-barred. (Def. Opp'n at 21 n.19.)

Defendant's argument is off the mark. A statute of limitations defense does not affect commonality. See Duprey v. Connecticut Dept. of Motor Vehicles, 191 F.R.D. 329, 340-41 (D. Conn. 2000) ("numerous courts have held that the presence of a statute of limitations defense to some of the class members' claims does not defeat certification.") (citing cases). But it does call into question the scope of Jermyn's proposed class.

The statute of limitations for claims under sections 349 and 350 of New York's General

Business Law is three years. Gristede's Foods, Inc. v. Unkechauge Nation, 532 F. Supp. 2d 439, 452-53 (E.D.N.Y. 2007) (citing cases). A party's cause of action under these statutes begins to accrue "upon injury by the deceptive act or practice, i.e., when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." Id. at 453 (citations and quotation omitted). Applying these principles to this case means that members of the proposed class who were injured more than three years prior to the date this suit was filed (January 10, 2008) cannot bring a claim against Best Buy under New York General Business Law.

However, this three year time-bar does not apply to claims for unjust enrichment. In New York, the statute of limitations for an unjust enrichment claim is 6 years. Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 518 (2d Cir. 2001). Accordingly, plaintiff's proposed class definition—which is premised on a six-year statute of limitations period—remains the same. But, to resolve the statute of limitations problem for the section 349 and 350 claims, the Court exercises its discretion to create a subclass of class members who do not have timely claims under New York General Business Law, and whose only claim is for unjust enrichment. Fed. R. Civ. P. 23(c)(5); see Visa Check, 280 F.3d at 141.

**3. Typicality**

The typicality requirement mandates that the claims of the class representatives be typical of those of the class. This requirement is satisfied "if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." Marisol A., 929 F. Supp. at 691. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns

underlying individual claims." Robidoux, 987 F.2d at 936-37. Since each member of the class complains of the same conduct—he made a purchase at Best Buy, subsequently asked to receive the benefits of the price match guarantee and was denied the benefits of the policy—is suing under the same theory of liability and requesting the same type of relief, the typicality requirement is satisfied.

The defendant argues the plaintiff's claims are not typical, because "Plaintiff himself does not fall within his own class definition because the lower price he found on his product did not qualify under Best Buy's Price Match policy." (Def. Opp'n at 19.)[4] This argument is without any merit.

As the plaintiff points out, there is a certain amount of irony in the fact that defendant continues to try to deny that plaintiff had a valid price match request despite being confronted with undisputed evidence to the contrary (as plaintiff puts it, "Best Buy's Anti-Price Match Policy is so engrained at a corporate level that . . . even through counsel, they [sic] *attempt* [sic] *to build a case against the price match*" (Pl. Reply at 2 (emphasis in original))). The plaintiff's evidence establishes that he falls within the definition of the class. He testified and provided documentary evidence that shows he asked Best Buy to match a price from a local brick and mortar store (TriState) and that Best Buy refused to match TriState's price. Best Buy labels the match request an "internet offer," because as proof of TriState's advertised price, the plaintiff printed out the advertised price from TriState's website. Best Buy's characterization of TriState's advertised price is belied by the documentary evidence. After being rejected by Best Buy, the plaintiff went to TriState and bought the camera *in the store* for the same discounted

[4] The defendant frames this argument as an attack on numerosity, when it is better suited as an argument against typicality. The Court addresses it as argument against typicality, although, under either class certification requirement, defendant's argument would be unpersuasive.

price that was captured in the website print out. Jermyn's in-store receipt establishes that TriState offered the lower price *in its store*. (Braunstein Decl. Ex. 15.) Accordingly, plaintiff's price match request fully complied with the Best Buy price match guarantee—he brought Best Buy "verification of the lower price, plus [his] original Best Buy receipt to claim [his] refund" (Braunstein Decl. Ex. 25), but was nonetheless denied the benefits of the company's price match guarantee.

**4. Adequacy of Representation**

The adequacy of representation requirement is two-fold: plaintiff's counsel must be qualified and experienced enough to conduct the class action litigation, and the interests of the named plaintiff must not be adverse to those of the class. See Marisol A., 126 F.3d at 378.

Best Buy wisely does not contest the adequacy of plaintiff's counsel. Based on the submissions before the Court, plaintiff's counsel obviously has the experience, qualifications and competence necessary to prosecute this action vigorously.

However, Best Buy contends that Jermyn himself is not an adequate class representative because his claims are subject to unique defenses—"namely, that he did not qualify for [a price match] under the plain terms of the policy." (Def. Opp'n at 23.) The Court has already disposed of this argument: plaintiff's testimony, if believed, establishes that his price match request complied with Best Buy's public (if not its private) price match guarantee. Since this is the only challenge to Jermyn's credentials, and since he has the exact same interest in prosecuting this action as the rest of the class, he is an adequate class representative.

### 5. Plaintiff's Class is Ascertainable

Apart from the four requirements set forth in the text of Rule 23(a), Best Buy argues that class certification should be denied because the plaintiff's class is not identifiable. This argument, too, lacks merit.

"Although Rule 23(a) does not expressly require that a class be definite in order to be certified, a requirement that there be an identifiable class has been implied by the courts. This implied requirement is often referred to as 'ascertainability.'" Fogarazzao v. Lehman Bros., Inc., 232 F.R.D. 176, 181 (S.D.N.Y. 2005) (citations and quotations omitted). This implied requirement of "ascertainability," requires that the description of the class be "sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member." Cortigiano v. Oceanview Manor Home For Adults, 227 F.R.D. 194, 207 (E.D.N.Y. 2005) (citation omitted). "An identifiable class exists if its members can be ascertained by reference to objective criteria. Where membership in the class requires a subjective determination, the class is not identifiable." Dunnigan v. Metro. Life Ins. Co., 214 F.R.D. 125, 135 (S.D.N.Y. 2003) (citations and quotations omitted).

Best Buy contends that the proposed class is not ascertainable because the Court must conduct "mini-hearings" for each and every class member on the following questions:

1) Whether the class member made a purchase at Best Buy;

2) Whether the customer found a lower price;

3) Whether the customer found that price within 30 days (14 days for computers, monitors, notebook computers, printers, camcorders, digital cameras and radar detectors) of the purchase;

4) Whether that price was from a competitor qualifying under Best Buy's Price Match Guarantee;

5) Whether that competitor had that product available at the time the price match was requested;

6) Whether that product was of same brand and model as the one at Best Buy;

7) Whether the customer provided verification of the lower price to Best Buy; and

8) Whether Best Buy denied the customer the price match for a reason *other* than one of these listed reasons.[5]

(Def. Opp'n at 18 (numbers added)); see also Wilson v. Toussie, 01 Civ. 4568, 2008 WL 905903, at *4 (E.D.N.Y. Mar. 31, 2008) ("A class's definition will be rejected when it requires addressing *the central issue of liability* in a case and therefore the inquiry into whether a person is a class member essentially require[s] a mini hearing on the merits of each [plaintiff's] case.") (emphasis added).

The defendant's reliance on Wilson is misplaced. In Wilson the court denied plaintiffs' motion for class certification. The plaintiffs alleged that the defendants "systematically steered minority homebuyers to racially segregated neighborhoods . . . to buy homes they could not afford and that were overpriced, had mortgage and/or property tax payments that were dramatically higher than represented, defectively built, lack promised amenities and were located in different towns and worse neighborhoods than represented." Id. at *1. The defendants argued that the plaintiffs' class could not be ascertained because the class definition required the court to make a series of determinations for each individual member, which would amount to "mini-hearings." See id. at *4. The court agreed, and found that the class could not be identified

[5] This last question has nothing to do with whether an individual is a member of the class. Either a person met the objective criteria for a price match or he did not. Best Buy's policy does not say that even when a customer meets all of the publicly stated price match requirements, he may be denied a price match for some "other," unstated reason. Best Buy's attempt to introduce this type of subjective inquiry into the class smacks of the exact type of gamesmanship that is at the heart of the plaintiff's lawsuit.

because it would need to make a number of subjective determinations for each member to determine whether a member bought a home *because of the deceptive conduct.* Id. at *5. However, the court suggested that if the plaintiffs' class was limited to "All Blacks and Hispanics who purchased residential real estate from the Sellers and who because of their race and/or national origin, were *pursuant to the Seller's blanket policies and standard practices*, steered to areas Defendants had designated for Blacks and Hispanics purchasers . . . ." id. (emphasis added), the court could "easily" ascertain the class.

Thus, the guiding rule for the Wilson court was whether class membership required the court to make subjective determinations about each member, and whether the injury alleged was predicated on those subjective determinations as opposed to some blanket policy" or "standard practice" of defendants. Since plaintiff here alleges that many more Best Buy customers were denied refunds pursuant to an undisclosed "blanket policy" and "standard practice" of the company, this case is one in which the Wilson court could "easily" certify the class.

Best Buy also argues that identifying class members would be difficult—and the class unascertainable—because the proposed class period spans three different versions of Best Buy's price match guarantee. This issue is not a barrier to class identification, however, since the Court will simply apply the version of Best Buy's policy that was in effect at the time of each member's claimed purchase. Subclasses can be certified if it proves necessary. Fed. R. Civ. P. 23(c)(5).

Finally, liability in this case is predicated on one unifying question shared by the entire class—whether Best Buy's internal Anti-Price Matching Policy violates various laws—which means there are no subjective issues about Best Buy's liability that require a "mini-trial." Once liability is determined, each class member will be responsible for documenting his or her injury,

but that is true in many class actions

**B. Rule 23(b)(2)**

Class certification under Rule 23(b)(2) is appropriate where "broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury." Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 162 (2d Cir. 2001). It is well established in this Circuit that a district court considering certification of such a class:

> should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.

Parker v. Time Warner Entm't Co., 331 F.3d 13, 18-19 (2d Cir. 2003) (quoting Robinson, 267 F.3d at164).

Here, the class seeks an injunction that would either bar Best Buy from advertising and promoting a price match guarantee or from enforcing its undisclosed Anti-Price Matching Policy.

Defendant argues that plaintiff cannot sustain "his putative class as an injunctive class under Rule 23(b)(2)" (Def. Opp'n at 24) because plaintiff seeks money damages that are not "incidental" to his claim for injunctive relief DeMarco v. Nat'l Collector's Mint, Inc., 229 F.R.D. 73, 81 (S.D.N.Y. 2005), and he cannot meet the commonality or predominance requirements of Rule 23(b)(3).

The Court has already addressed Best Buy's argument on commonality; it need not be repeated here. Predominance is irrelevant to certification under Rule 23(b)(2). It is addressed below in the discussion about Rule 23(b)(3).

Defendant's argument about whether damages are merely "incidental" to injunctive relief misreads this Court's opinion in DeMarco, and expressly ignores the Second Circuit's holding in Robinson.

In DeMarco, I certified a class pursuant to Rule 23(b)(2). The plaintiff in that case commenced a class action because of defendants' failure to comply with their obligations under the Hobby Protection Act, 15 U.S.C. § 2101, in connection with their production, marketing, and distribution of a commemorative coin known as the "Freedom Tower Silver Dollar." The class sought a declaration that the defendants had engaged in unfair trade practices and asked for an injunction against further sales of the coin. The class also sought money damages equal to the amount of each member's purchase of the coin. This Court held—based on Robinson—that the class met the requirements of Rule 23(b)(2) because the class sought injunctive relief and incidental money damages. 229 F.R.D. at 81.

This Court did not, as Best Buy suggests, find that certification of an injunctive relief class pursuant to Rule 23(b)(2) was inappropriate when money damages are not "incidental" to the request for injunctive relief. The Second Circuit expressly rejected such a rule in Robinson:

> Thus, the question we must decide is whether this bright-line bar [i.e., Best Buy's suggested incidental damage rule] to (b)(2) class treatment of all claims for compensatory damages and other non-incidental damages (e.g., punitive damages) is appropriate. For the reasons we discuss below, *we believe that it is not and therefore decline to adopt the incidental damages approach* set out by the Fifth Circuit in Allison and followed by the district court below. Rather, we hold that when presented with a motion for (b)(2) class certification of a claim seeking both injunctive relief and non-incidental monetary damages, a district court must consider the evidence presented at a class certification hearing and the arguments of counsel, and then assess whether (b)(2) certification is appropriate in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case. The district court may allow (b)(2) certification if it finds in its informed, sound judicial discretion that (1) *the positive weight or value to the plaintiffs of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed*, and (2) class treatment would be efficient and manageable, thereby achieving an appreciable

measure of judicial economy.

Robinson, 267 F.3d at 164 (citations and quotations omitted) (emphasis added). In DeMarco, I found that certification of a class that was seeking both injunctive relief and "incidental" damages plainly followed from the holding in Robinson, because the Second Circuit had decided that Rule (23)(b)(2) certification was appropriate in the more difficult case where money damages were not incidental to the request for an injunction.

Applying the rule of Robinson, this action should be certified under Rule 23(b)(2). If plaintiff's allegations are true, there is overwhelming positive value to the injunctive relief that the class seeks. Such an injunction would prevent Best Buy from continuing to perpetrate its alleged deceptive Anti-Price Matching Policy on all New York consumers in violation of New York law. The state of New York placed a high value on this type of injunctive relief; indeed, section 349 expressly provides for it: "Any person who has been injured by reason of any violation of this section may bring an action in his own name *to enjoin such unlawful act or practice* . . . ." N.Y. Gen. Bus. Law § 349(b) (emphasis added).

In addition, the availability of injunctive relief in this case gives a plaintiff the type of incentive needed to bring this action. Here, Jermyn complains that he lost $180.00 based on Best Buy's application of its secret Anti-Price Matching Policy. Such damages are insufficient to incent a plaintiff to bring suit; they are exceeded by the filing fee. However, a reasonable plaintiff aggrieved by Best Buy's policy would want to prevent Best Buy from committing wrongful acts in the future. Accordingly, the class meets the requirements of Rule 23(b)(2).

## C. Rule 23(b)(3)

A class action may be maintained under Rule 23(b)(3) if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to all available methods for the fair and just adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

To meet the Rule 23(b) predominance standard, plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." Visa Check, 280 F.3d at 136 (citations and quotations omitted). The Rule 23(b)(3) predominance requirement is "more stringent" and "far more demanding than" the commonality requirement of Rule 23(a). Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 623-24 (1997); see also Blyden v. Mancusi, 186 F.3d 252, 269 (2d Cir. 1999) (referring to the "heightened requirements" of Rule 23(b)(3)).

Best Buy argues that individual issues of law and fact predominate this case—rehashing the same arguments it made in opposing commonality and typicality—because the valid application of Best Buy's price match guarantee depends on a number factors that cannot be proven on a class-wide basis. Even under the more demanding standard of Rule 23(b)(3), this argument is unpersuasive.

### 1. Deceptive Trade Practices Under Section 349

This action is based on Best Buy's failure to fully and adequately disclose its Anti-Price Matching Policy to Jermyn and the class members generally. Courts have repeatedly held that that section 349 claims based upon omissions, non-disclosures and deceptive corporate policy are well suited to class certification. See, e.g., Dupler, 249 F.R.D. at 44 (citing cases).

To state a claim under section 349, a plaintiff must allege "(1) the act or practice was consumer-oriented, (2) the act or practice was misleading in a material respect, and (3) the plaintiff was injured as a result." Id. at 43 (citation omitted). For a section 349 claim, the plaintiff "need not show" that he relied on the misrepresentation in order to have a valid claim, id. (citation omitted) and an "omission" is actionable as well. Id. at 43-44 ("courts have certified Section 349 where the claim is based on an omission, rather than an actual misrepresentation") (citations omitted).

Applying these standards, it is abundantly clear that common issues "predominate" over any individual issues with respect to the section 349 claim. The plaintiff alleges that Best Buy violated section 349 by failing to disclose its internal Anti-Price Matching Policy, which was enforced against all class members and denied them the benefit of the company's publicly disclosed price match guarantee. Plaintiff's section 349 claim is about defendant's omission to disclose its real policy to him, but that same omission is the gravamen of every class member's claim, and so may be proven on a class-wide level, based on evidence from Best Buy's records and testimony from past and present employees.

Defendant asserts that individualized issues about damages and injury for each class member predominate the lawsuit, making class certification inappropriate. But, "The individualized nature of the potential damages does not preclude a finding that common questions of law and fact predominate over individualized damages." Id. at 46 (quoting Aliotta v. Gruenberg, 237 F.R.D. 4, 12 (D.D.C. 2006)).

In Dupler, the court granted plaintiff's motion for class certification under Rule 23(b)(3). The plaintiff sued the warehouse club Costco, alleging, *inter alia*, that the defendant's membership renewal policy was a deceptive trade practice under section 349. The defendant

opposed class certification under section 349 by arguing that individual issues predominated: these included whether the same misrepresentation was made to each class member, and whether defendant could assert individualized affirmative defenses against some class members. Id. at 44-45. The court rejected this argument, holding, "Plaintiff . . . asserts that, as a whole, Costco has failed to adequately disclose their backdating policy to its members. . . . [T]he allegation is one of omission, not an actual misrepresentation." Id. at 44. In other words, the plaintiff's theory of injury was not based on individual issues, but rather on the non-disclosure of the defendant's internal policy. Thus, class certification was granted, because the central issue to the lawsuit was whether the defendant's alleged omission violated section 349.

Similarly, the central issue in this case is whether Best Buy's alleged non-disclosure of its Anti-Price Matching Policy violated section 349. The fact there may have been differences in the manner in which Best Buy deprived customers of the benefits of its heavily advertised price match guarantee is a distinction that makes no difference, because the injury alleged is identical in each instance: non-disclosure of Best Buy's Anti-Price Matching Policy.

The fact that the mechanical calculation of each member's damages will have individualized aspects does not preclude class certification.

**2. Section 350**

The parties' arguments for and against class certification for the plaintiff's section 350 claim (false advertising) are identical to the arguments relating to section 349. For the same reasons stated above about the section 349 claim, the Court finds class certification for the section 350 claim is appropriate. See also Taylor v. Am. Bankers Ins. Group, Inc., 267 A.D.2d 178, 178 (1st Dep't 1999) (holding that class certification is appropriate for a section 350 claim when the alleged injury concerns the defendant's general practice). The predominant issue

before the Court is whether Best Buy's advertisements about its price match guarantee were false and misleading because the company had a secret Anti-Price Matching Policy.

**3. Unjust Enrichment**

Common issues also predominate with respect to the unjust enrichment claim.

In New York, unjust enrichment requires "proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004); accord Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 203 n. 8 (2d Cir. 2004).

Best Buy's argument in opposition to class treatment for the unjust enrichment claim is no different than its argument against certification of the section 349 claim—that individualized determination for each member of the class "consume" the common issues for unjust enrichment claim, making class certification improper. But, for the same reasons articulated for the section 349 claim, the Court believes that "common questions of law and fact will continue to predominate because it does not appear that any such [individual] issues would be unique to each plaintiff." Dupler, 249 F.R.D. at 47. The predominant issue for the unjust enrichment claim is whether Best Buy was enriched at the class' expense by using an undisclosed policy of aggressively discouraging and denying customers' valid price match requests.

**4. Superiority of Class Action**

Rule 23(b)(3) sets forth four factors for the court to consider in deciding the superiority of a class action:

> (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(4) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3); Amchem, 521 U.S. at 615-16 (1997).

Based on these factors, there is no doubt that a class action is superior to all other available methods "for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Each class member's claim is too small to warrant bringing an individual lawsuit. A class action will also save enormous litigation costs for all parties and allow them to efficiently prosecute theirs claims and defenses. From the standpoint of judicial economy, the only rational way to proceed is to concentrate the class' claims in a single action, rather than have numerous separate trials on the same issue, based on the same evidence. Finally, there is no practical obstacle to conducting this action as a class action. As noted, only minimal individualized evidence is necessary (all of it relating to damages).

Accordingly, the class meets all of the Rule 23(b)(3) requirements for the section 349, 350 and unjust enrichment claims. The class is hereby certified.

**Conclusion**

For the reasons stated above, plaintiff's motion for class certification is granted. The Court certifies the following class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3):

All New York citizens and residents who, from January 10, 2002 until the present, made a purchase at Best Buy and within 30 days (14 days for computers, monitors, notebook computers, printers, camcorders, digital cameras and radar detectors) after the purchase found a lower price from an entity qualifying under Best Buy's published price match guarantee on an available product of the same brand and model, provided verification of the lower price to Best Buy and were denied the benefit of Best Buy's price match guarantee.

Excluded from the Class are the defendant; any parent, subsidiary or affiliate of the defendant; any entity in which the defendant has or had a controlling interest, or which the defendant otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor or assignee of the defendant.

The Court also certifies a subclass of persons within the class whose claims under New York General Business Law are time-barred because their alleged injury occurred prior to January 10, 2005.

This constitutes the decision and order of the Court.

Dated: March 19, 2009

U.S.D.J.