UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
THOMAS JERMYN, on behalf of himself
and all others similarly situated,

                        Plaintiff,

    - against -

BEST BUY STORES, L.P.,

                        Defendant.
----------------------------------------------------X

Docket No. 08 CV 00214

# MEMORANDUM OF LAW IN SUPPORT OF CLASS REPRESENTATIVE'S MOTION FOR APPROVAL OF PROPOSED CLASS NOTICE AND CLASS NOTICE PLAN

*On the Brief:*
Michael L. Braunstein

TABLE OF CONTENTS

INTRODUCTION & PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    A.    Best Buy Contacts Consumer Via Multiple Channels . . . . . . . . . . . . . . . 2

    B.    Plaintiff's Proposed Notices Comport With Rule 23(c)(2)(B) . . . . . . . . 3

    C.    Plaintiff's Proposed Notice Plan Provides The Best
        Notice Practical Under The Circumstances . . . . . . . . . . . . . . . . . . . . . .4

        i.    Dedicated Website. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

        ii.    Best Buy Email Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        iii.    Notice on Best Buy's Website . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        iv.    Best Buy SMS Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        v.    Best Buy Social Networking Notice . . . . . . . . . . . . . . . . . . . . . 6

        vi.    Publication Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

    D.    Best Buy Should Perform The Tasks And Pay The Costs Of The
        Notice Program Because The Plaintiff Has Made A Significant
        Liability Showing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

    E    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

LEGAL ARGUMENTS

    POINT I:    THE CLASS REPRESENTATIVE'S PROPOSED CLASS
                      NOTICE AND NOTICE PLAN. . . . . . . . . . . . . . . . . . . . . . . . . . 10

                      A.    Plaintiff's Proposed Notice Plan. . . . . . . . . . . . . . . . . . . 11

    POINT II:    BEST BUY SHOULD PERFORM THE TASKS AND BEAR
                      COST OF NOTICE TO THE CLASS MEMBERS. . . . . . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

TABLE OF AUTHORITIES

**Cases:**

Abrams v. Interco, Inc., 719 F.2d 23 (2nd Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Aspinall v. Philip Morris Cos., Inc., 2005 WL 3629357
(Mass.Super. Dec. 7, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Barahona-Gomez v. Reno, 167 F.3d 1228 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 14

Bremiller v. Cleveland Psychiatric Institute, 898 F.Supp. 572 (N.D.Ohio 1995). . . . . . 11

Browning v. Yahoo! Inc., 2006 WL 3826714 (N.D.Cal. 2006) . . . . . . . . . . . . . . . . . . . .13

Catlett v. Missouri State Highway Comm., 589 F. Supp. 949
(W.D. Mo. 1984). ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Disanto v. Best Buy Stores, L.P. et al, Case 2:09-cv-04727 (PGS-ES) . . . . . . . . . . . . . 9

Eisen v. Carlisle and Jacquelin, 417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hartman v. Wick, 678 F.Supp. 312 (D.D.C. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Hunt v. Imperial Merchant Services, Inc., 560 F.3d 1137 (9th Cir. 2009) . . . . . . . . . . . 16

In re MetLife Demutualization Litigation, 262 F.R.D. 205 (E.D.N.Y. 2009) . . . . . . . . . 12

In re Nasdaq Market-Makers Antitrust Litig., 169 F.R.D. 493
(S.D.N.Y. 1996) ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Prudential Sec. Inc. Ltd. P'Ships Litig., 164 F.R.D. 362  (S.D.N.Y. 1996) . . . . . . .11

Kansas Hasp. Ass'n v. Whiteman, 167 F.RD. 144 (D. Kan. 1996) . . . . . . . . . . . . . . . . 14

Laff v. Best Buy Stores, L.P., Case 1:09-cv-06649. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Macarz v. Transworld Systems, Inc., 201 F.RD. 54 (D. Conn. 2001) . . . . . . . . . . . . . . 15

Martin v. Weiner, No. 06CV94, 2007 WL 4232791 (W.D.N.Y. Nov. 28, 2007) . . . . . . 12

Meadows v. Ford Motor Co., 62 F.R.D. 98 (W.D. Ky. 1973) . . . . . . . . . . . . . . . . . . . . .16

Miller v. Republic Nat. Life Ins. Co., 559 F.2d 426 (5th Cir. 1977. . . . . . . . . . . . . . . . .10

Mullane v. Central Hanover Trust Co., 339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . . . . . . .10

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978) . . . . . . . . . . . . . . . . . . . . . . . .14

Perry v. FleetBoston Financial Corp., 229 F.R.D. 105 (E.D.Pa. 2005) . . . . . . . . . . . . . 12

Pigford v. Veneman, 355 F.Sup.2d 148 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 12

Six Mexican Workers v. Arizona Citrus Growers, 641 F.Supp. 259
(D.Ariz. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Southern Ute Indian Tribe v. Amoco Prod. Co., 2 F.3d 1023 (10th Cir. 1993) . . . . . . . . 15

Ste. Marie v. Eastern R. Assn., 72 F.R.D. 443 (S.D.N.Y 1976) . . . . . . . . . . . . . . . . . . . 14

Truong et al v. Best Buy Stores L.P. et al, Civ Action No. 8:09-cv-00997
(JVS-MLG) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**References and Statutes:**

Federal Rules of Civil Procedure 23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,10,11

Federal Rules of Civil Procedure 23(c)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . .1,2,10,11

## INTRODUCTION & PRELIMINARY STATEMENT

This memorandum of law is submitted in support of the motion of Plaintiff and Class Representative, Thomas Jermyn ("Class Representative" or "Plaintiff") for an Order: 1) approving the Class Representative's proposed Class Notices; 2) approving Class Representative's proposed notice plan; and 3) requiring Best Buy to perform the tasks and bear the cost of Class Notice. The proposed notices advise the class concisely and clearly state in plain, easily understood language each element of Rule 23(c)(2)(B). Plaintiff proposes a comprehensive multi-part notice program using the same channels Best Buy utilizes to contact consumers in its regular course of business. This program is designed to ensure that the best notice practicable is directed to class members.

Best Buy should perform the tasks and bear the costs of class notice because Plaintiff's proposed notice program utilizes the same multi-media channels that Best Buy utilizes in its regular course of business to contact consumers. Accordingly, Best Buy would incur very little burden, expense or cost in providing notice to the class in the same manner which Best Buy routinely communicate with consumers in the ordinary course of business. Further, a well-recognized exception to the general rule that Plaintiff pay for notice, when there has been a showing of Defendant's liability, applies here and justifies requiring Best Buy to bear the cost of sending class notice.

On March 26, 2009, Plaintiff's proposal regarding the methodology and content of class notice was provided to Best Buy's counsel in hopes of reaching an agreement and/or narrowing the issues before making the instant motion. Best Buy has not responded.

Based on the foregoing, it is respectfully requested that the Court grant the Class Representative's motion in its entirety.

1

## FACTS

As part of its regular business practices, Best Buy communicates with consumers and markets its goods and services through its website, weekly email campaigns, SMS text messaging and social networking outlets. Plaintiff's proposed notices advise the class concisely and clearly state in plain, easily understood language each of the six Rule 23(c)(2)(B) elements. Plaintiff proposes a comprehensive multi-part notice program using the same channels Best Buy utilizes to contact consumers in its regular course of business.

**A.      Best Buy Contacts Consumer Via Multiple Channels**

As part of its regular business practices, Best Buy communicates with consumers and markets its goods and services through its website, email campaigns, SMS text messaging and social networking outlets. "Best Buy will continue its focus on cross-channel marketing, between stores, contact centers and the website." (Exhibit 1).

Best Buy's website contains multiple pages which promote its "Price Match Guarantee". (Exhibit 2). Additionally, Best Buy engages in weekly email campaigns through which it regularly sends emails to consumers, including consumers in New York. This includes emails promoting, and directly linking to, Best Buy's misleading public "Price Match Guarantee". (Exhibit 3).

In addition to its website and email campaigns, "Best Buy sees the mobile channel as affecting every customer interaction" (Exhibit 4) and "[a]ccording to sources at the company, Best Buy is putting the wheels in motion on a spruced up mobile website, more aggressive and targeted SMS texting campaigns, and mobile application updates to help capture a larger share of the mobile community's attention." (Exhibit 5). Best Buy proclaims that

> [w]e have built several SMS subscription databases including our
> Best Buy Deal of the Week, which we promote and send each

2

> week in both English and Spanish. To support our stores at a local
> level, we're executing a district-level SMS pilot enabling those
> stores to send news, alerts, events & offers specific to their store –
> to the customers that shop in their store.

(Exhibit 6). Further, Best Buy believes that SMS text/mobile marketing "is going to be a big

area. It may dwarf what the PC Internet does." (Exhibit 7).

Likewise, Best Buy uses social networking outlets, such as Twitter, as another channel to

directly communicate with consumers. "With Twelpforce specifically and social media in

general we can actively seek out the conversations that increasingly are happening outside our

channels." (Exhibit 8). "The idea of socializing the Best Buy brad through initiatives like

Twelpforce, IdeaX, our Facebook Page or Blue Shirt Nation represents huge opportunities to

humanize an entire organization" and "find ourselves invited into conversations, and welcomed

into the purchase and support cycle." (Exhibit 9). Further, Twitter "is a fairly inexpensive way

to reach out to customers and leverage the downtime of people in the stores". (Exhibit 10).

Best Buy's multi-channel technology based marketing services is particularly appropriate

for its customers who are "a lot of early-adopter technology users, and our stores attract more

tech savvy consumers to begin with." (Exhibit 11).

**B.     Plaintiff's Proposed Notices Comport With Rule 23(C)(2)(B)**

Plaintiff proposes the utilization of a short form (Ex. 12) and long form notice (Ex.

13). Plaintiff's proposed notices concisely and clearly state in plain, easily understood

language: (1) the nature of the action; (2) the class definition; (3) the class claims, issues and

defenses; (4) that if a class member desires, he may enter an appearance through counsel; (5)

that the Court will exclude from the Class any member who requests exclusion, stating when

and how members may elect to be excluded; and (6) the binding effect of a class judgment

on class members under Rule 23(c)(3).

3

### C.     Plaintiff's Proposed Notice Plan Provides The <u>Best Notice Practical Under The Circumstances</u>

Best Buy is a data driven company on the cutting edge of utilizing analytics and financial metrics to guide its business decisions.  For instance, Best Buy found that when "employee engagement" of a customer increases by one tenth of a point, the company's operating income rises by $100,000. (Ex. 14).  Nonetheless, Best Buy avers that it fails to document in any meaningful manner when consumer price match requests are denied. (Ex. 15).

Accordingly, Plaintiff proposes a comprehensive multi-part notice program designed to ensure that the best notice practicable is directed to class members.  On March 26, 2009, Plaintiff's proposal regarding the methodology and content of class notice was provided to Best Buy's counsel in hopes of reaching an agreement and/or narrowing the issues before making the instant motion. (Ex. 16).  Best Buy has voiced an objection, commented or responded in any manner.

Plaintiff proposes the following notice program: .

### i.     <u>Dedicated Website</u>

Plaintiff will establish and maintain a dedicated website, www.bestbuypricematchclassaction.com, which shall contain the more detailed "long form" notice and other litigation related documents.  The more detailed "long form" notice will also be available at the Notice Administrator's website, www.berdonclaims.com.

### ii.     <u>Best Buy Email Notice</u>

Best Buy utilizes an extensive email database in its regular marketing endeavors, including emailing New York consumers and making them aware of Best Buy's "Price Match Guarantee" policies.  In fact, Best Buy engages in weekly email campaigns in which it disseminates emails to hundreds of thousands or millions of customers who have previously

shopped at Best Buy.  Accordingly, Best Buy shall identify and send the "short form" notice by email to all New York residents from an email address that identifies itself as originating from Best Buy.  The reference line on the email shall be "Best Buy Price Match Class Action Lawsuit."  The text of the email should be the short form notice.  The short form notice will contain a hyper-link to www.bestbuypricematchclassaction.com.  Plaintiff has no objection to Best Buy using an over-inclusive list if it is unable to properly narrow the email database to New York residents, but objects to the use of any email database which has the potential to be under-inclusive.

The email should be sent directly from Best Buy to ensure that spam blockers which have already accepted Best Buy's emails, but which may be Class Representative's email, will not prevent receipt of notice.  By using the "Short Form" notice on such emails, the text content will not be unduly memory-laden and will be accepted by most email sites.

### iii.    Notice on Best Buy's Website

Plaintiff proposes that Best Buy shall:

  a.  Add an item to the navigation bar on the Best Buy home page entitled "www.BestBuyPriceMatchClassAction.com" that hyperlinks to www.BestBuyPriceMatchClassAction.com;

  b.  Add a button/hyperlink to all price match policy/guarantee pages of Best Buy's website, including, but not limited to, http://www.bestbuy.com/site/olspage.jsp?type=page&contentId=1118843518 460&id=cat12098, http://www.bestbuy.com/site/olspage.jsp?type=page&contentId=1043363603 302&id=cat12098&searchresults=1&searchterm=price+match and http://www.bestbuy.com/site/null/null/pcmcat188300050014.c?id=pcmcat188 300050014.  This button/hyperlink should be labeled "Best Buy Price Match Class Action" and should hyperlink to www.BestBuyPriceMatchClassAction.com;

  c.  Best Buy shall post a thread entitled "Best Buy Price Match Class Action" on the Best Buy user's discussion forum located generally at http://www.forums.bestbuy.com/bb/ entitled "Best Buy Price Match Class Action" that states "If you were denied a Best Buy price match between

January 10, 2002 and _____, 2010 (date of the Court's Notice Plan approval), you may be a member of the class suing Best Buy for denying proper price match requests.  To find out more, go to http://www.bestbuypricematchclass action.com." The text "http://www.bestbuypricematchclass action.com" should hyperlink to http://www.bestbuypricematchclass action.com.

### iv.   **Best Buy SMS Notice**

Best Buy has several SMS subscription databases, including databases that allow the SMS texting of store specific offers to consumers who have made purchases at that particular Best Buy store (Ex. 6).  Accordingly, Best Buy shall send a SMS text to all New York State SMS subscription databases stating: "Were you denied a Best Buy price match between Jan 2002 and _____, 2010?  For Class action info go to: http://www.bestbuypricematchclassaction.com." The text "http://www.bestbuypricematchclassaction.com" should hyperlink to http://www.bestbuypricematchclassaction.com.  Plaintiff has no objection to Best Buy using an over-inclusive list if it is unable to properly narrow the SMS database(s), but objects to the use of any SMS database(s) which has the potential to be under-inclusive.

### v.   **Best Buy Social Networking Notice**

Best Buy promotes Twelpforce in advertising, store signage and online banner advertising to drive consumers to this new and inexpensive means of direct consumer contact. Best Buy considers Twelpforce to be a "fairly inexpensive way to reach consumers."  (Ex. 10). Over the course of two (2) weeks, Best Buy shall post eight (8) times between the hours of 8 p.m. and 9 p.m. (EST) at http://twitter.com/twelpforce.  There shall be three weekday and one weekend posts each week.  The posts shall state: "Were you denied Best Buy price match bet. Jan 02 and March 10? Class action info: http://www.bestbuypricematchclassaction.com." The text "http://www.bestbuypricematchclassaction.com" should hyperlink to http://www.bestbuypricematchclassaction.com.

6

vi.    **Publication Notice**

The Class Representative also proposed to publish the short form notice once in *The New York Times.*

**D.    Best Buy Should Perform The Tasks And Pay The Costs Of The Notice**
**Program Because The Plaintiff Has Made A Significant Liability Showing**

As set forth in greater detail in Plaintiff's motion for a preliminary injunction, filed simultaneously herewith, Best Buy's advertising and application of its public price match policy is a prohibited deceptive practice. Best Buy's internal documents confirm that consumers "are denied their price match request either 'regularly' or 'sometimes' 68% of the time, 60% of its employees "never or rarely" honor a price match request to a warehouse club and that its "[s]tore employees already have it engrained in them not to match warehouse clubs." Further, deposition transcripts from the AG Action confirm that despite its stated policy Best Buy "can't match percentages off. It's got to be on a price point . . ."

Additionally, the *HD Guro Report* details three different Best Buy stores denying the same proper price request, that Best Buy management instructs employees not to honor its public price match policy in order to increase store profit margin, teaches its employees techniques for denying proper price match requests, and has a code word, "murfing," for disregarding consumers proper price match requests.

Lastly, Best Buy's argument in this action that Jermyn did not have a proper price match request, demonstrates that Best Buy is unable, or unwilling, to properly apply its price match policy and that consumers are being deceived and harmed as a result.

7

## E.   Procedural History

On January 10, 2008, Plaintiff filed the initial complaint in the United States District Court for the Southern District of New York. (Dkt. 1). On March 3, 2008, a Court Ordered Stipulation was entered allowing Plaintiff to amend the complaint. (Dkt. 4). On March 27, 2008, Plaintiff filed the First Amended Complaint ("Complaint"). (Dkt. 13). On April 18, 2008, Defendant served an Answer. (Dkt. 15). On June 4, 2008, two days before Plaintiff's class certification motion was due and without seeking Plaintiff's consent or leave of Court, Defendant served an Amended Answer. (Dkt. 19).

On June 6, 2008, Plaintiff moved for class certification. (Dkt. 22 & documents filed under seal). Plaintiff's class certification motion was fully briefed and submitted to the Court on July 2, 2008. (Dkts. 26, 27, 28 and 31). The Court's March 19, 2009 Decision and Order granted Plaintiff's motion for class certification, with the caveat that a subclass will be precluded, by the applicable statute of limitations, from asserting a New York General Business Law §349 claim. (Dkt. 36). On April 2, 2009, Best Buy petitioned the Second Circuit for Permission to Appeal the Court's Decision and Order on an interlocutory basis. (Exhibit A). On April 22, 2009, Plaintiff answered Best Buy's Petition. (Exhibit B).

On May 15, 2009, Plaintiff moved to unseal the class certification motion papers. (Dkt. 43). On June 3, 2009, the Court ruled that "information about the price match policy and its application are NOT confidential or sensitive", ordered "that such information be unsealed" and directed Magistrate Judge Freeman to review specific submitted documents and rule on whether they should remained sealed. (Dkt. 50).

On September 1, 2009, Truong et al v. Best Buy Stores L.P. et al, Civ Action No. 8:09-cv-00997 (JVS-MLG), was filed in the Central District of California. On September

14, 2009, <u>Disanto v. Best Buy Stores, L.P. et al</u>, Case 2:09-cv-04727 (PGS-ES), was filed in the District of New Jersey.   These actions assert the identical allegations regarding Best Buy's Anti-Price Match Policy.

On October 8, 2009, the United States Court of Appeals for the Second Circuit denied Best Buy's Rule 23(f) motion for leave to appeal the Court's class certification order on an interlocutory basis.

On October 20, 2009, Judge Freeman ruled that Best Buy had "not demonstrate that the information it seeks to redact constitutes current or recent financial data, or legitimately confidential information regarding Defendants pricing models" and unsealed the remaining class certification motion papers. (Dkt. 58).  October 21, 2009, <u>Laff v. Best Buy Stores, L.P.</u>, Case 1:09-cv-06649, a class action making identical Anti-Price Match allegations against Best Buy, was filed in the Northern District of Illinois.

On October 28, 2009, Plaintiff moved the Judicial Panel on Multidistrict Litigation ("JPML") for the Order transferring and consolidating the <u>Truong,</u> <u>Disanto</u> and <u>Laff</u> Actions to the Honorable Colleen McMahon, U.S.D.J., in the United States District Court for the Southern District of New York where the instant action is pending.   On February 5, 2010, the JPML denied Plaintiff's motion for consolidation and transfer.

## LEGAL ARGUMENTS

### POINT I

### THE CLASS REPRESENTATIVE'S PROPOSED CLASS NOTICES AND NOTICE PLAN PROVIDES THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES

The Class Representative's proposed notices advise the class concisely and clearly state in plain, easily understood language each of the six elements under Rule 23(c)(2)(B). Plaintiff proposes a comprehensive multi-part notice program using the same channels Best Buy utilizes to contact consumers in its regular course of business. This program is designed to ensure that the best notice practicable is directed to class members.

Adequate notice in a class action is required by the constitutional mandate of due process. This fundamental principle was articulated in Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314-315 (1950) as follows:

> In elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearances. But if due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied... but when notice is a person's due, process which is a mere gesture is not due process.

Neither due process nor rules of civil procedure requires that notice to class members be in any particular form. In re Four Seasons Securities Laws Litigation, 63 F.R.D. 422 (W.D.Okl. 1974). Notice in a class suit must present fair recital of the subject matter and proposed terms and give opportunity to be heard to all class members. Miller v. Republic Nat. Life Ins. Co., 559 F.2d 426 (5th Cir. 1977). Class notice should contain the information reasonably necessary to make a

decision on whether to remain a class member and be bound by the final judgment or to opt out of the action. <u>Bremiller v. Cleveland Psychiatric Institute</u>, 898 F.Supp. 572 (N.D.Ohio 1995).

Plaintiff's proposed notices comply with Rule 23(c)(2)(B).

## A.   **Plaintiff's Proposed Notice Plan**

Plaintiff proposes a comprehensive multi-part notice program designed to ensure the best notice practicable is directed to class members. Plaintiff believes the above-described notice plan provides the best notice practical under the circumstances.

To satisfy due process, notice to class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." <u>In re Prudential Sec. Inc. Ltd. P'Ships Litig.</u>, 164 F.R.D. 362, 368 (S.D.N.Y. 1996). For Class Actions certified under rule 23(b)(3) "the Court must direct the class members the best notice practical under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Fed.R.Civ.P. 23(c)(2)(b).

Plaintiff proposed a comprehensive six part notice program to ensure the best notice practical is directed to class members. The notice program is extensive, multi-faceted and innovative employing website notice, email notice, texting notice, social networking notice and publication particularly suitable to this case. Plaintiff proposes:

1) An official website containing long-form notice and other litigation documents;

2) Email notice from Best Buy directed to Best Buy's New York database(s);

3) Best Buy website shall add

   a) to its home page a navigation bar hyperlinking to the litigation website;

11

    b) a button/hyperlink to all its price match policy/guarantee pages of Best Buy's website

    c) post a thread titled "Best Buy Price Match Class Action" on its users' discussion forum;

4) Best Buy shall send short-form notice to all New York SMS subscription databases;

5) Best Buy shall post on its twitter channel; and

6) Plaintiff shall post short-form notice in the New York Times.

While sending notice by mail is preferred when all or most of the Class members can be so contacted, where, as here, all Class members cannot be contacted by mail the authorities hold that notice by publication is sufficient. Pigford v. Veneman, 355 F.Sup.2d 148, 162 (D.D.C. 2005) citing Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 174 (1974); Aspinall v. Philip Morris Cos., Inc., 2005 WL 3629357, at*2 (Mass.Super. Dec. 7, 2005) (where there is no reasonably practical way to provide individual notice, notice by publication will suffice); See In re MetLife Demutualization Litigation, 262 F.R.D. 205 (E.D.N.Y. 2009) (Publication in newspapers best practicable notice to millions of members of the class); Perry v. FleetBoston Financial Corp., 229 F.R.D. 105 (E.D.Pa. 2005) (Notice published in USA Today is acceptable class notice).

Further, Courts have also found that publishing notice on a defendant's website can be the best notice practicable under the circumstances. See Martin v. Weiner, No. 06CV94, 2007 WL 4232791, *3 (W.D.N.Y. Nov. 28, 2007) (finding the "best notice practicable under the circumstances" to satisfy Fed.R.Civ.P. 23(c)(2)'s class action notice requirement was publishing notice on defendant's website). Here, Best Buy itself has acknowledged that its customer profile includes early-adopter technology users. Accordingly, internet viewing of Best Buy's website is a logical method of teaching consumers who shop at Best Buy.

Lastly, Courts have more recently endorsed the use of email notice as the best notice practicable under the circumstances. See Browning v. Yahoo! Inc., 2006 WL 3826714, 8 (N.D.Cal. 2006) (email notice which directs class member to the website where they may access complete notice and other information, as well as other materials concerning this lawsuit.)  In this information age, email communication has become a primary mode of communicating with customers.  In fact, Best Buy endorses this method of reaching its customers and Class members as it uses weekly email campaigns which send out hundreds of thousands, if not millions of emails which, inter alia, link to its Price Match Guarantee, and does so at little or no additional cost.

Plaintiff's proposed notice program includes judicially accepted manners of providing class notice, publication, website and email notice provisions, which are appropriate for the instant matter.  Additionally, the notice program includes innovative technological notice provisions, SMS text notice and twitter social networking notice, which are channels Best Buy utilizes in its regular course of business to contact consumers and are particularly appropriate for Best Buy customers who are early-adopter technology users and tech savvy consumers.

This program is designed to ensure that the best notice practicable is directed to class members.

## POINT II

## BEST BUY SHOULD PERFORM THE TASKS AND BEAR COST OF NOTICE TO THE CLASS MEMBERS.

While the general rule is the representative plaintiff should bear the costs relating to the sending of notice, the Court has great discretion when determining what kind of notice program is required under the circumstances and "[a] district court may enlist the aid of a defendant in identifying class members to whom notice must be sent." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 348 (1978). It is also "appropriate to order a defendant, rather than a representative plaintiff, to perform tasks other than identification that are necessary to the sending of notice... where the defendant may be able to perform a necessary task with less difficulty or expense than could the representative plaintiff... ie., the task could be performed more efficiently by the defendants." Oppenheimer, at 355-57. "In such cases... the district court properly may exercise its discretion under Rule 23(d) to order the defendant to perform the task in question." Id.

It is particularly appropriate for a defendant that routinely sends communications to the class members to bear the cost of notice because class notice could be included as part in these regular communications. See Kansas Hasp. Ass'n v. Whiteman, 167 F.RD. 144, 145-46 (D. Kan. 1996) (where defendants sent monthly "medical cards" to class members, class notice ordered to be included in these monthly letters to class members; defendants also ordered to bear cost of class notice). Indeed, the Supreme Court has noted that "a number of district courts have required defendants in Rule 23 (b)(3) class actions to enclose class notices in their own periodic mailings to class members in order to reduce the expense of sending the notice." Id. at 355 (citing Ste. Marie v. Eastern R. Assn., 72 F.R.D. 443, 450 n. 2 (S.D.N.Y 1976)); see also Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999) (ordering defendant to provide

14

notice of the pending 23(b)2 action and finding "no real burden to the [defendant] in providing

notice" where defendant could easily provide such notice in its regular course of business);

Southern Ute Indian Tribe v. Amoco Prod. Co., 2 F.3d 1023, 1030 (10th Cir. 1993)(same);

Abrams v. Interco, Inc., 719 F.2d 23, 30 (2nd Cir. 1983)(same); In re Nasdaq Market-Makers

Antitrust Litig., 169 F.R.D. 493, 515 n.19 (S.D.N.Y. 1996) (requiring notice sent to subclass be

inserted in defendants' mailings); Kan. Hosp. Ass'n v. Whiteman, 167 F.R.D. 144, 145-46 (D.

Kan. 1996) (requiring defendants to insert notice into monthly mailings).

     Here, Plaintiff's proposed notice program utilizes the same multi-media channels that

Best Buy utilizes in its regular course of business to contact consumers.  Accordingly, Best

Buy would incur very little burden or cost in providing notice to the class in the same manner

which Best Buy routinely communicate with consumers in the ordinary course of business.

     Additionally, Plaintiffs contend that Best Buy should bear the costs associated with

publication of the Notice in the proposed newspaper.  Imposition of the cost of publication is

within the Court's discretion. See Oppenheimer Fund, Inc. v Sanders, 437 U.S. 340 (1977).

There also is precedent for ordering the defendant to pay the costs of the notice. See Martin v.

Weiner, No. 06CV94, 2007 WL 4232791, *3 (W.D.N.Y. Nov.28, 2007), Hartman v. Wick, 678

F.Supp. 312, 329 (D.D.C. 1988); See also Six Mexican Workers v. Arizona Citrus Growers, 641

F.Supp. 259, 264 (D.Ariz. 1986).

     Further, a well-recognized exception to this general rule that the plaintiff pay for notice,

when there has been a showing of the defendant's liability, applies here and justifies requiring the

defendant to bear the cost of sending class notice. Hartman v. Wick, 678 F. Supp. 312, 328-329

(D.D.C. 1988) ("As the Court has already found defendant liable, defendant must bear the full

expense of this notification task.") (citations omitted); Macarz v. Transworld Systems, Inc., 201

15

F.RD. 54, 58-59 (D. Conn. 2001); Catlett v. Missouri State Highway Comm., 589 F. Supp. 949,

951-52 (W.D. Mo. 1984); Meadows v. Ford Motor Co., 62 F.RD. 98, 101-02 (W.D. Ky. 1973).

Catlett v. Missouri Highway and Transp. Comm'n, 589 F.Supp. 949, 952 (D.Mo. 1984)

(shifting notice costs "because the liability of the [defendant] has been established").

These district court decisions point us towards recognizing, as commentators have

suggested, a general principle that "interim litigation costs, including class notice costs, may

be shifted to defendant after plaintiff's showing of some success on the merits, ***whether by***

***preliminary injunction, partial summary judgment, or other procedure.***" 3 William B.

Rubenstein, Alba Conte, and Herbert B. Newberg, Newberg on Class Actions § 8:6 (4th

ed.2007) (emphasis added); Hunt v. Imperial Merchant Services, Inc., 560 F.3d 1137, 1143

(9th Cir. 2009)

As set forth in greater detail in Plaintiff's motion for a preliminary injunction filed

simultaneously herewith, Best Buy's advertising and application of its public price match

policy is a prohibited deceptive practice.  Best Buy's internal documents confirm that

consumers "are denied their price match request either 'regularly' or 'sometimes' 68% of the

time, 60% of its employees "never or rarely" honor a price match request to a warehouse

club and that its "[s]tore employees already have it engrained in them not to match

warehouse clubs."

Further, deposition transcripts from the AG Action confirm that despite its stated

policy Best Buy "can't match percentages off.  It's got to be on a price point . . ."

Additionally, the *HD Guro Report* details three different Best Buy stores denying the

same proper price request, that Best Buy management instructs employees not to honor its

public price match policy in order to increase store profit margin, teaches its employees

16

techniques for denying proper price match requests, and has a code word, "murfing", for disregarding consumers proper price match requests.

In fact, Best Buy's argument in this action that Jermyn did not have a proper price match request, demonstrates that Best Buy is unable, or unwilling, to properly apply its price match policy and that consumers are being deceived and harmed as a result.

Lastly, in <u>Eisen</u> the court in specifically stated that "[w]e are concerned here only with the notice requirements of subdivision (c)(2), which are applicable to class actions maintained under subdivision (b)(3). By its terms subdivision (c)(2) is inapplicable to class actions for injunctive or declaratory relief maintained under subdivision (b)(2)." <u>Eisen</u> at 177 n. 14.

Based on the foregoing, Best Buy should perform the tasks and bear the costs for providing class notice

## CONCLUSION

Based on the foregoing, it is respectfully requested that the plaintiff's motion be granted in its entirety.

Dated: April 13, 2010
       Chestnut Ridge, New York

                                   **KANTROWITZ, GOLDHAMER
                                   & GRAIFMAN, P.C.**

By: _____
                          Gary S. Graifman, Esq. (GSG2276)
                          Michael L. Braunstein, Esq. (MLB5973)
                          747 Chestnut Ridge Road
                          Chestnut Ridge, New York  10977
                          Tel:    (201) 391-7000

                          Michael Scott Green, Esq.
                          (Admitted *Pro Hac Vice*)
                          **GREEN & PAGANO, LLP**
                          522 Route 18
                          P.O. Box 428
                          East Brunswick, NJ  08816
                          Tel:    732-390-0480