UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――x

THOMAS JERMYN, on behalf of himself
and all others similarly situated,

        Plaintiff,

        -against-

BEST BUY STORES, L.P.,

        Defendant.

―――――――――――――――――――――――x

08 Civ. 214 (CM)

USDS SDN
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/15/11

## MEMORANDUM ORDER DENYING DEFENDANT'S SECOND MOTION TO DECERTIFY THE CLASS

McMahon, J.:

### I. Introduction

Before the court is Defendant Best Buy's second motion to decertify the Plaintiffs' class. For background information, the reader is referred to the first six published decisions in this case. Jermyn v. Best Buy Stores, L.P., 256 F.R.D. 418 (S.D.N.Y. 2009) ("Jermyn I"); Jermyn v. Best Buy Stores L.P., 2010 WL 2545757 (S.D.N.Y. May 25, 2010) ("Jermyn II"); Jermyn v. Best Buy Stores L.P., 2010 WL 3911509 (S.D.N.Y. Sept. 28, 2010) ("Jermyn III"); Jermyn v. Best Buy Stores L.P., 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) ("Jermyn IV"); Jermyn v. Best Buy Stores, L.P., 2011 WL 280798 (S.D.N.Y. Jan. 18, 2011) ("Jermyn V"); and Jermyn v. Best Buy Stores, L.P., 2011 WL 2119725 (S.D.N.Y. May 24, 2011) ("Jermyn VI").

1

As pertinent here, Plaintiffs are New York customers of Defendant who were refused a "price match" at Defendant's store. Defendant advertises that it will meet any competitor's price on products it sells, subject to several conditions (the "Price Match Guarantee"). See generally Jermyn I, 256 F.R.D. at 424-25.

This court certified as a class New York customers of Defendant who were denied valid Price Matches, under Rule 23(b)(2) and (b)(3). I identified as a common question whether, as alleged by plaintiffs, Defendant maintains and communicates to local branches a corporate policy of denying valid price matches (the "Anti-Price Matching Policy"). If it does, then it is liable under New York's General Business Law for misleading consumers. Id. at 429-31. Subsequently, this court denied Defendant's motion for summary judgment, finding that the question whether such a policy exists is for the jury. Jermyn V, 2011 WL 280798, at *2.

Defendant argues that the class must be decertified in light of the United States Supreme Court's recent decision in Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541 (2011). For the reasons discussed below, the motion is denied.

## II. Discussion

### A. Standard for decertification

"[A] district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met." Sirota v. Solitron Devices, Inc., 673 F.2d 566, 572 (2d Cir. 1982); see also Monaco v. Stone, 187 F.R.D. 50, 59 (E.D.N.Y. 1999) ("A class may be decertified if later events demonstrate that the reasons for granting class certification no longer exist or never existed."). However, even assuming Plaintiffs bear the burden of demonstrating that the requirements of

Rule 23 continue to be met,[1] "the Court may not disturb its prior [certification] findings absent 'some significant intervening event,' or 'a showing of compelling reasons to reexamine the question.'" Doe v. Karadzic, 192 F.R.D. 133, 136-137 (S.D.N.Y. 2000) (internal citations omitted). Courts faced with a motion to decertify must also take account of the progression of the litigation. Langley v. Coughlin, 715 F. Supp. 522, 552 (S.D.N.Y. 1989) ("[T]he Court must take into consideration that an eve-of-trial decertification could adversely and unfairly prejudice class members, who may be unable to protect their own interests."); see also Woe v. Cuomo, 729 F.2d 96, 107 (2d Cir. 1984) (finding abuse of discretion where district court decertified the class after granting summary judgment in part).

Defendant identifies one "intervening event" which it claims is sufficiently "significant" to demonstrate that the Rule 23 requirements are not, in fact, met: the Supreme Court's recent decision in Wal-Mart v Dukes, 131 S.Ct. at 2541 ("Dukes" herein). A change in controlling law can provide a basis for decertification. See, e.g., In re Grand Theft Auto Video Game Consumer Litigation, 251 F.R.D. 139 (S.D.N.Y. 2008) (decertifying in light of intervening Second Circuit decision); Doe, 192 F.R.D. at 133 (decertifying in light of intervening United States Supreme Court decision).

As will be seen, the recent Dukes decision does undermine Second Circuit precedent this Court relied on in certifying the Rule 23(b)(2) "injunction class", requiring reexamination of that issue. However, upon reexamination, this Court's certification of two separate classes, seeking

---

[1] There is authority in this Circuit pointing either way. Compare In re Vivendi Universal, S.A. Securities Litigation, 2009 WL 855799, at *3 (S.D.N.Y. Mar. 31, 2009) ("[D]ecertifying or redefining the scope of a class should only be done where defendants have met their 'heavy burden' of proving the necessity of taking such a 'drastic' step") (quoting Gordon v. Hunt, 117 F.R.D. 58, 61 (S.D.N.Y. 1987), with Doe v. Karadzic, 192 F.R.D. 133, 136-137 (S.D.N.Y. 2000) (acknowledging that "at least one district court has concluded that the burden of persuasion remains throughout the litigation with the party desiring to maintain certification") (citing Smith v. Armstrong, 968 F. Supp. 50, 53 (D.Conn. 1997)).

distinct relief, is entirely consistent with Dukes. Moreover, Dukes makes no new law that impacts in any way this Court's certification of the Rule 23(b)(3) "damages class." Thus, the class is certified separately under Rules 23(b)(2) Rule 23(b)(3), and Defendant's motion is denied.

### B. The Supreme Court's decision in *Dukes*

As noted, Defendant relies on the Supreme Court's recent decision in Dukes. There, the Court decertified a Rule 23(b)(2) class consisting of a 1.5 million current and former employees of Wal-Mart, on two grounds. First, the Court held that a Rule 23(a) prerequisite – the requirement that a common question of law or fact unite the class – was not satisfied. Second, it held that an injunction class under Rule 23(b)(2) was not appropriate when accompanied by class claims for individualized money damages that are more than merely "incidental" to the injunctive relief.

The issue on this motion is whether these holdings change the legal circumstances in a way that shows that the requirements of Rule 23 certification are not in fact met. Sirota, 673 F.2d at 572. It is therefore necessary to examine Dukes in some detail.

The named plaintiffs were three current and former female employers of Wal-Mart, the country's largest private employer. Each alleged that she suffered unlawful sexual discrimination in pay and promotion, and sought class certification to bring Title VII claims on behalf of all current and former female employees against Wal-Mart.

Importantly, plaintiffs' theory was not that Wal-Mart had any "express corporate policy against the advancement of women," Dukes, 131 S.Ct. at 2548, or a "uniform employment practice" that violated the law, id. at 2554. To the contrary, plaintiffs acknowledged that Wal-

4

Mart's general corporate policy was (1) to allow local managers discretion over their employees' pay and promotion, and (2) to forbid illegal discrimination in the exercise of that discretion. Id. at 2547, 2553. Instead, plaintiffs' theory was that the policy of allowing discretion, combined with a "corporate culture" of sexual stereotyping, caused women to be disfavored in the workplace – in other words, the corporate "hands off" policy created a disparate impact on women. Id. at 2548; cf. General Telephone Co. of Southwest v. Falcon, 457 U.S. 147 (1982) ("Falcon" herein).

The District Court certified the class under Rule 23(b)(2) (an "injunction class"), relying for its finding of "commonality" on three types of evidence: statistics showing pay and promotion disparities between men and women; anecdotal evidence from about 120 women; and expert testimony from a sociologist to the effect that Wal-Mart's corporate culture rendered it vulnerable to discrimination in discretionary pay and promotion decision-making. Dukes, 131 S.Ct. at 2549. The Ninth Circuit, sitting en banc, affirmed the certification, finding that the plaintiffs' evidence established commonality by raising the issue "whether Wal–Mart's female employees nationwide were subjected to a single set of corporate policies (not merely a number of independent discriminatory acts) that may have worked to unlawfully discriminate against them in violation of Title VII." Id. at 2549. The court did not certify a Rule 23(b)(3) class.

The class certified made claims for injunctive and declaratory relief, as well as punitive damages and back pay, although class members did not assert claims for compensatory damages. The Ninth Circuit held that claims for monetary relief did not defeat certification under Rule 23(b)(2), because "they did not 'predominat[e]' over the requests for declaratory and injunctive relief, meaning they were not 'superior in strength, influence, or authority' to the nonmonetary claims." Id. at 2550 (quoting 603 F.3d 571, 616 (9th Cir. 2010) (en banc)).

5

C. Commonality

The first Dukes holding pertinent to this motion is that the class described failed the threshold "commonality" requirement of Federal Rule of Civil Procedure 23(a)(2), which requires that "there [be] questions of law or fact common to the class." Summarizing the commonality requirement for a five-Justice majority, Justice Scalia said that:

> Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," (citation omitted). This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

Dukes, 131 S.Ct. at 2551.

The Supreme Court held that such a "common contention" was lacking in Dukes because the basis for liability – the "glue" holding all of the individual class member's claims together – was not merely disfavor in pay and promotion, but the *reason why* each class member was disfavored. When the ability to recover hinges on the reason why a particular action was taken, answering the question in one case will not necessarily do anything to advance the resolution of that same issue in another class member's case. Id. at 2561 ("What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (Emphasis in original). Thus, the fact that hundreds or thousands of women were disfavored in

6

pay and promotion did not present a common question unless it was the result of a discriminatory practice or policy that motivated each decision, and therefore made it illegal under Title VII.

The Court rested its analysis on its earlier decision in <u>Falcon</u>, 457 U.S. at 157. There, the Court held that to demonstrate a common question in his Title VII case, the class proponent was required to "bridge the gap" between his individual allegations of discrimination and the existence of a class of workers who suffered the same injury, by showing one of two things: (1) that a testing procedure used to inform employment decisions was itself discriminatory, or (2) "significant proof" that the defendant employer operated under a "general policy of discrimination" that affected the putative class members the same way. See <u>id.</u> at 158-60, n.15.

In <u>Dukes</u>, neither basis for finding commonality among the alleged acts of discrimination existed: testing was not in issue, and the Court found that "significant proof" of "general policy of discrimination" was "entirely absent":

> The only corporate policy that the plaintiffs' evidence convincingly establishes is Wal-Mart's "policy" of *allowing discretion* by local supervisors over employment matters. On its face, of course, that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy *against having* uniform employment practices.

<u>Id.</u> at 2553-554 (emphasis in original). Without identifying some kind of corporate guidance that led to the local managers' discretion being exercised in a uniformly discriminatory way, the Court reasoned, there was no common thread of liability that tied together each class member's distinct claim, and tied them all to Wal-Mart's corporate management. Although plaintiffs' sociologist tried to provide this "guidance" in the form of a "social framework analysis", the court rejected that evidence because it "does nothing to advance respondents' case." Id. at 2554. In particular, the expert admitted that "he could not calculate whether 0.5 percent or 95 percent

of the employment decisions at Wal–Mart might be determined by stereotyped thinking"; but, the Supreme Court held,

> "[W]hether 0.5 percent or 95 percent of the employment decisions at Wal–Mart might be determined by stereotyped thinking" is the essential question on which respondents' theory of commonality depends. If [the expert] admittedly has no answer to that question, we can safely disregard what he has to say. It is worlds away from "significant proof" that Wal–Mart "operated under a general policy of discrimination."

Id. at 2553, 2554.

Plaintiffs' contention that an unspoken policy of discrimination, which seeped down from the corporate to the local level, could be inferred from statistical and anecdotal evidence that women fared poorly in pay and promotion decisions across Wal-Mart's stores was also rejected; the Court determined that this evidence of a surreptitious general corporate policy fell "well short." Id. at 2555.[2] The Court therefore concluded that, "Because respondents provide no convincing proof of a companywide discriminatory pay and promotion policy, we have concluded that they have not established the existence of any common question." Id. at 2556-557.

If the reader wonders exactly what Dukes' commonality analysis has to do with this case, s/he is likely not alone. Dukes can be read as a straightforward application of Falcon: plaintiffs were required to identify "significant proof" of a general corporate policy of discrimination. Although the policy of allowing discretion can suffice as such a policy, two additional things must be shown: (1) the delegation of discretion creates a disparate impact, and (2) some "specific

---

[2] The majority read the Court's prior cases on "delegated authority" liability to require more than just delegated discretion and disparate impact; in addition, to prove liability on a theory of delegated authority, the plaintiff must challenge a "specific employment practice." Dukes, 131 S.Ct. at 2555-556. Justice Ginsberg, in dissent, suggests that this additional requirement is novel. See Dukes, 131 S.Ct. at 2564-65 (Ginsburg, J., dissenting in part).

employment practice" is the source of discrimination. The Supreme Court held that there was no significant proof of any general corporate policy of discrimination, and that the delegation proof was unaccompanied by a "specific employment practice" that led to a disparate impact. Dukes, 131 S.Ct. at 2555.

Defendant tries to import these Title VII pleading requirements to Plaintiffs' claims, which allege deceptive business practices under New York's General Business Law ("GBL"). It fails for two reasons. First, these additional requirements are designed for and unique to the context of employment discrimination. They are necessary because the employer's motivation is crucial to establishing liability, and therefore to the common liability necessary to glue the plaintiff class together. In the deceptive business practice context, by contrast, the "why" is less relevant, if it is relevant at all. It is enough for liability that (1) Defendant advertises its Price Match Guarantee, and (2) secretly maintains an Anti-Price Matching Policy, thereby (3) deceiving the public. Unlike discrimination claims, plaintiffs' GBL claims do not necessarily depend on any specific motivation. See Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009) ("Deceptive acts are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances.") (internal citations, quotation marks, and alterations omitted).

However, to the extent Plaintiffs here are required to identify a specific, illegal corporate policy rendering Defendant liable to all the class members, they have manifestly done so. Plaintiffs allege that Defendant communicated to local branches a corporate policy of denying valid price match requests, contrary to its advertised Price Match Guarantee. If that allegation were proved, it would render Defendant liable to every class member who suffered under the practice. Indeed, what Plaintiffs here allege is precisely what is missing in Dukes. 131 S.Ct. at

9

2548 ("These plaintiffs . . . do not allege that Wal-Mart has any express corporate policy against the advancement of women."). Had the Dukes plaintiffs actually alleged a general, non-discretionary corporate policy disfavoring women and offered some proof that such a policy existed, then obviously the case could have and would have proceeded as a class action. What the Supreme Court held was that the plaintiffs failed to present "significant proof" of such a policy.

Here, on the other hand, Plaintiffs have presented significant (indeed, ample) proof that the illegal policy alleged in fact exists. I have already so held, not once, but at least three times. The basis for that holding is set forth in both the original certification order and the denial of Defendant's motion for summary judgment; it will not be repeated again here. See Jermyn I, 256 F.R.D. at 429-433; Jermyn VI, 2011 WL 2119725, at *1-4. The fact that the arguments and the analysis on this motion are essentially identical only serves to highlight the futility of Defendant's motion seeking reconsideration on the basis of Dukes – a case that is only relevant to the point on which it is most clearly distinguishable. See Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co., Inc., --- F.Supp.2d ----, 2011 WL 3652477, at *7 (S.D.N.Y. Aug. 22, 2011) ("[T]he facts in Wal–Mart, a case in which three named plaintiffs sought to represent a class of 1.5 million women in an employment discrimination suit, are entirely distinguishable from the facts of the instant securities class action.").

Defendant's arguments on this motion persistently conflate the issues of liability, or legal injury, and damages. It fails to appreciate that by deceiving the public alone it would have committed a legal wrong against anyone who can prove that he was injured thereby. If, in Dukes, the plaintiffs had sufficiently proved a general corporate policy of sexual discrimination, class treatment would have been appropriate; as explained, that policy would be the "thread" or

"glue" tying all of the plaintiff's injuries together. The mere fact that some women (only putatively) in the class were, in fact, turned down for non-discriminatory reasons would not preclude certification in that case, any more than the fact that one woman's adverse treatment damaged her in the amount of $100, while another woman's damaged her in the amount of $500. One thing that Dukes clearly does not change is that "for purposes of Rule 23(a)(2) even a single common question will do." 131 S.Ct. at 2556 (internal quotation marks and alterations omitted). Here, the significant proof an illegal, centralized corporate policy presents the requisite common question.

In conclusion, unlike the Dukes plaintiffs, Plaintiffs here have a theory that ties the class members to each other and to the Defendant: that Defendant maintains an Anti-Price Matching Policy illegal under New York's GBL. Proving that theory, without more, establishes Defendant's liability to all of the class members. Moreover, unlike the Dukes plaintiffs, Plaintiffs here have offered substantial proof that such a policy in fact existed, thereby raising a prima facie inference of broad-based, classwide injury.

Thus, the intervening event of Dukes does not demonstrate a lack of commonality, and Defendant's motion to decertify on that basis is denied.

D. Certification of the Rule 23(b)(2) class

Dukes' second holding, concerning the effect of claims for monetary relief on the court's certification of an injunction class under Rule 23(b)(2) is potentially pertinent to this case.

While the Court split 5-4 on the commonality issue, it was unanimous that the plaintiffs' claims for back pay should not have been certified as part of a Rule 23(b)(2) class. Here is what it said:

11

> Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." One possible reading of this provision is that it applies *only* to requests for such injunctive or declaratory relief and does not authorize the class certification of monetary claims at all. We need not reach that broader question in this case, because we think that, at a minimum, claims for *individualized* relief (like the backpay at issue here) do not satisfy the Rule. The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." (citation omitted). In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. *Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.*

Dukes, 131 S.Ct. at 2557 (final emphasis added). The Court concluded that "the combination of individualized and classwide relief in a (b)(2) class" is inconsistent with the history and structure of the rule, and forbade any such combination where the monetary component was more than merely "incidental" to the injunctive relief. Id. at 2557-560. In the course of doing so, it rejected Court of Appeals precedent, relied on by the Ninth Circuit upholding certification, that permitted combination (b)(2) classes so long as the individualized monetary relief does not "predominate" over injunctive relief. See id.; see also Dukes, 673 F.3d at 616 (citing Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 164 (2d Cir. 2001)).

This Circuit had long followed the "predominates" approach rejected in Dukes. See U.S. v. City of New York, --- F.R.D. ----, 2011 WL 2680474, at *7-8 (E.D.N.Y. July 8, 2011) (analyzing Robinson and Dukes). Indeed, this court relied on that law when certifying Plaintiffs' class under Rule 23(b)(2). See Jermyn I, 256 F.R.D. at 433-34. Thus, it is appropriate to re-examine the issue of Rule 23(b)(2) certification in the wake of Dukes.

12

However, such a reexamination reveals that the abrogation of Robinson does not affect certification in this case. Dukes, like Robinson, was concerned with Rule 23(b)(2) classes that sought both injunctive and monetary relief. In this case, by contrast, I have certified a class both under Rule 23(b)(2) and under Rule 23(b)(3), after finding that the additional requirements of (b)(3) – "predominance" of common questions over individualized questions and "superiority" of class resolution – are satisfied here. Jermyn I, 256 F.R.D. at 434-437. In this case, unlike Dukes, a (b)(2) class is not seeking monetary relief, but only an injunction against further statutory violations. It is a separately certified (b)(3) class that seeks money damages. Because violation of the GBL entitles both classes to relief, only one liability trial will need to be held to determine the existence *vel non* of the Anti-Price Matching Policy, see GBL 349(h).

Defendant repeats its earlier argument that it will be impossible, or unconstitutional, or uneconomical to resolve the individual claims for damages in the Rule 23(b)(3) class. This court addressed these arguments in its discussion of "ascertainability" in the original order granting certification. Jermyn I, 256 F.R.D. at 433-34. Dukes says nothing about this issue, and therefore provides no basis for re-examining the previous holding.

III. Conclusion

The motion is therefore denied. The Clerk of the Court is directed to close the motions at Docket Nos. 110 and 189.

Dated: September 15, 2011

                                                    U.S.D.J.

BY ECF TO ALL COUNSEL